IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

IN THE MATTER OF:

| | |
|---|---|
| NAME:    KELLI JONES MATTOX | CASE NO. 07-51925 |
| DEBTOR(S) | CHAPTER 13 |

---

| | |
|---|---|
| KELLI JONES MATTOX | PLAINTIFF |
| VS | ADVERSARY PROCEEDING: _____ |
| WELLS FARGO, NA, | DEFENDANT |

---

**Complaint Seeking Damages in Non-Core Adversary Proceeding
For Improper Fees and Violation of the Automatic Stay**

---

### Introduction

1. This is an action for actual and punitive damages filed by the Debtor pursuant to Sections 105, 362(a), 502(b) and 524 of the Bankruptcy Code, Rules 2016 for charging and collecting improper bankruptcy fees and charges. This is also an action for actual and punitive damages filed by the debtors pursuant to Sections 2605(e)(1)(A) and 2605(e)(1)(B)(2) of Title 12 of the United States Code and Sections 3500.21(e)(1) and 3500.21(e)(3) of Regulation X.

### Jurisdiction and Venue

2. Jurisdiction is conferred on this Court pursuant to the provisions of Section 1334 of Title 28 of the United States Code in that this proceeding arises in and is related to the above-captioned Chapter 13 case under Title 11 and concerns property of the Debtor in that case.

3. This Court has both personal and subject matter jurisdiction to hear this case pursuant to Section 1334 of Title 28 of the United States Code, Section 157(b)(2) of Title 28 of the United States Code, and pursuant to the Order entered by the Judges of the United States District Court for the Eastern District of Kentucky on July 30,1984 (the Referral Order), which Order was entered in accordance with the Bankruptcy Amendments and Federal Judgeship Act of 1984.

1

4. This matter is primarily a core proceeding and therefore the Bankruptcy Court has jurisdiction to enter a final order. However, in the event this case is determined to be a non-core proceeding then and in that event the Plaintiff consents to the entry of a final order by the Bankruptcy Judge.

5. Venue lies in this District pursuant to Section 1391(b) of Title 28 of the United States Code.

### Parties

6. The Plaintiff in this case (herein after referred to as "Plaintiff" or "Debtor") is a debtor under Chapter 13 of Title 11 of the United States Code in case number 07-51925.

7. The Defendant, Wells Fargo Home Mortgage (herein after referred to as "Defendant" or "Wells Fargo") is a California corporation engaged in the business of residential real estate mortgage servicing with its principal place of business located at 1 Home Campus MAC X2401-049 Des Moines Iowa, 50328. Wells Fargo, NA has submitted to the jurisdiction of this Court by filing one or more claims in this case and regularly services thousands of mortgage loans in the Commonwealth of Kentucky. The address for service of process is Scott Shail, Vice President & Assistant General Counsel, Wells Fargo Law Department, MailCode: D1053-300, 301 South College Street, Charlotte, North Carolina 28288-0630.

### Factual Allegations

8. The Plaintiff is a homeowner who has a residential mortgage loan secured by a Deed of Trust that was serviced by Wells Fargo. Said property is located at 3026 Lynnwood Dr. Paris, KY.

9. This residence is the Plaintiff's primary residence as defined by the Truth in Lending Act.

10. On October 3, 2007, the Plaintiff filed a voluntary Chapter 13 bankruptcy petition, listing, among other debts, arrears on her home. Subsequently, Wells Fargo filed a sworn proof of claim on October 30, 2007 alleging arrears of $17,378.61. This amount included regular monthly payments of $772.84 for August 2006 through October 2007 totaling $11,592.60, lump sum charges, among other charges, of $1,062.50 for "Foreclosure Attorney Fees," $3,879.75 in "costs," and $150.00 in "Post-petition Bankruptcy Attorney Fees."

11. In her Chapter 13 bankruptcy plan, the Plaintiff proposed, pursuant to 11 U.S.C. §1322 (b)(5), to cure the pre-petition arrears of $17,387.61 to Wells Fargo, NA by payments made through the Chapter 13 Trustee while continuing to pay her regular contractual monthly payments to Wells Fargo directly "outside of the Chapter 13 plan."

12. On or about October 31, 2007 the Defendant by and through counsel objected to the Chapter 13 Plan proposed by the debtors. The grounds for the objection were that the plan does not cure the arrearage within a reasonable time.

13. The objection by Wells Fargo, NA was withdrawn on January 8, 2008 and the Debtor's Chapter 13 plan was confirmed on February 15, 2008.

14. On or about May 22, 2008, Wells Fargo, NA filed in the Bankruptcy Court a Motion for Relief from the Automatic Stay alleging that the Plaintiff was in arrears for post-petition mortgage payments due April 2008 and May 2008.

15. The Plaintiffs filed an Objection to this Motion and requested a hearing before the Bankruptcy Court.

16. On September 4, 2008, a "signed agreed order" was entered whereby the Plaintiff would make a payment of $395.58 on September 15, 2008 and each month thereafter through February 15, 2009 to cure post petition arrears. This agreed order however, was not the agreed order signed off by Debtor's counsel or the Chapter 13 Trustee. The Debtor and Debtor's counsel had agreed to payments of $377.20 beginning June 25, 2008 through November 25, 2008 to cure the post petition arrears. Moreover, the Defendant began accepting payments of $377.20 in June 2008 per the original agreed order.

17. The same "agreed order" also purported to include $650.00 in attorney's fees traceable to costs for the Motion for Relief from Stay. These fees were to be paid using the additional monthly payment the Debtor was making to the Defendant, aka her "stip payment."

18. On or about February 19, 2009, Debtor's counsel received a letter from Wells Fargo's counsel stating the Debtor owed a post-petition payment due February 1, 2009 in the amount of $775.48 and a stipulated payment due February 15, 2009 in the amount of $70.87. The letter stated the Debtor was to have 10 days to cure the default. Subsequently, on or about March 4, 2009, Wells Fargo filed a notice of default.

19. Despite the allegations in this letter and the subsequent Notice of Default, Wells Fargo's own ledger reflects that the Debtor's account was credited on February 12, 2009 with a payment of $775.48. The Debtor also paid the additional $70.87.

20. On or about March 7, 2009, the Debtor sent a payment in the amount of $780.00 to Wells Fargo for her March 2009 payment. Wells Fargo received this payment on March 12, 2009. Thereafter, Wells Fargo returned her payment. After this return of payment, the Debtor deposited her March 2009, April 2009, and May 2009 mortgage payments in the escrow account of Brian T. Canupp PSC.

21. On April 1, 2009 the Defendant sent a demand letter to the Plaintiff alleging total arrears owed of $18,578.90. On information and belief, the Plaintiff alleges that this demand for payment includes fees and charges which are duplicative.

22. On or about June 16, 2009 the Defendant filed a second notice of Default alleging the Debtor had failed to make her March 2009 and subsequent mortgage payments as well as $846.26 (less $70.87 being held in suspense) in stipulated payments.

23. On or about June 26, 2009, the Debtor again attempted to pay Wells Fargo with a check in the amount of $775.48. Wells Fargo again rejected said payment.

24. In all, the Debtor made "stip payments" totaling $1,975.91 which the Debtor avers and believes were never properly applied to her account.

25. The Plaintiff took this matter up with her attorney as and the Debtor's attorney tendered a "Qualified Written Request" via Certified Mail to Wells Fargo, pursuant to the Real Estate Settlement Procedures Act on or about November 23, 2009.

26. The Plaintiff avers that the Defendant received the Qualified Written Request as evidenced by Track and Confirm Report dated November 27, 2009.

27. As of the filing of this pleading, said Defendant has failed to have any form of communication with the Debtor's attorney, or with the Debtor to respond to or acknowledge the aforesaid Qualified Written Request regarding the subject account.

28. After closer review of the Defendant's payment ledger, the Defendant's accounting practices has left the Debtor in a state of default on this loan since confirmation of the plan February 15, 2008. More specifically, the Debtor's March 2008 payment is directly credited to contractual due date November 1, 2006. This misapplication of payments continues for each and every subsequent payment despite the previous confirmation order of the plan which contained a provision paying the Defendant for arrears stemming from August 2006 through October 2007.

29. In the Defendant's proof of claim, the Debtor is charged with $150.00 in post-petition Bankruptcy Attorneys Fees. The Defendant further charged $650.00 for resolution for the Motion for Relief from Stay. Despite the figures disclosed, according to the Defendant's ledger, the Debtor was charged with attorney's fees of $200.00 on or about October 2007, $150.00 on or about October 2007, $500.00 on or about January 2008, and $650.00 on or about August 2008. These fees are charged to the "corporate advance fee" account and, the Debtor avers and believes, were subsequently paid using her regular monthly payments.

30. According to the Defendant's ledger, from the period of October 2008 to February 2009, $1,347.24 was paid on the "corporate advance fee" account in the following transactions:

    a. October 2008: $79.72 removed from Trustee's suspense account to corporate advance fee account.

4

      b. October 2008: $15.66 removed from Debtor's suspense account to corporate advance fee account.
      c. January 2009: $264.64 removed from Trustee's suspense account to corporate advance fee account.
      d. January 2009:  $634.32 removed from Debtor's suspense account to corporate advance fee account.
      e. February 2009: $352.58 removed from Trustee suspense account to corporate advance fee account.

The Debtor avers and believes that these payments were paid using the Debtor's regular monthly payments in contrast to the terms of application specified in her mortgage and previous orders of this Court.

31. In the Defendant's proof of claim, the Debtor is charged with $158.40 in escrow shortage. According to the Defendant's ledger, beginning at the time the petition was filed and continuing through February 2009, the Debtor is being charged with an escrow shortage of up to $1503.55. This miscalculation puts the Debtor in the position of never being able to satisfy the escrow shortage.  Moreover, despite payments by the Trustee, the Debtor avers and believes Trustee payments were never properly applied to cure this escrow shortage.

32.   As part of the consumer credit transaction, Wells Fargo retained a security interest in the Debtor's primary residence.  The security interest is a mortgage.  The above named property is used as the principal dwelling of the Plaintiff at the time of the loan.

33. On or about March 25, 2010, the Plaintiff mailed a letter to the Defendant Wells Fargo, requesting the name and owner of the original mortgage not and clearly alerting Defendant to the fact that their request was being made pursuant to TILA 131(f).

34. The Plaintiff received a response to the request on April 26, 2010, dated April 19, 2010, which does not identify the owner of the promissory note secured by the Plaintiff's primary residence.


### Count I – Improper Fees Not Approved by the Bankruptcy Court

35. The allegations in paragraphs 1 through 34 of this complaint are realleged and incorporated herein by this reference.

36. The Plaintiff avers that the actions of Wells Fargo by the inclusion of improper and unauthorized legal fees and expenses as alleged herein without any prior notice or Court approval constitute willful, intentional, gross and flagrant violations of the provisions of Section 105 and 506 of Title 11 of the United States Code and Rule 2016 of the Federal Rules of Bankruptcy Procedure which provides, in pertinent part, that: "An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested."

37. As a result of the above violations, the Defendant is liable to the Plaintiff for actual damages, punitive damages and legal fees.

### Count II – Violation of 11 U.S.C. Sections 506 and 105

38. The allegations in paragraphs 1 through 37 of this complaint are realleged and incorporated herein by this reference.

39. The actions of Wells Fargo by charging post-petition legal fees and expenses as alleged herein without any prior notice or Court approval constitute willful, intentional, gross and flagrant violations of the provisions of Sections 105 and 506(b) of Title 11 of the United States Code.

40. As a result of the above violation, the Defendant is liable to the Plaintiffs for actual damages, punitive damages and legal fees.

### Count III – Violation of Confirmation Order

41. The allegations in paragraphs 1 through 40 of this complaint are realleged and incorporated herein by this reference.

42. The Debtor's Chapter 13 plan was confirmed February 15, 2009. Said plan included the secured claim of Wells Fargo in the amount of $17,378.61. Wells Fargo continued to pay itself fees and legal costs directly from the Debtor's monthly mortgage payment into its corporate advance account despite being paid from the Chapter 13 Trustee on the arrears alleged in its proof of claim.

43. Upon information and belief, the fees charged and collected by the Defendant included fees and charges already included in the sworn proof of claim. Charging and collecting these fees were in violation of the confirmation order and constitute a "double dip" in collecting fees directly from the Debtor and from the Chapter 13 Trustee.

44. The Debtor also avers that funds received from the Chapter 13 Trustee in the amount of $1,762.80 were not properly applied to the arrears and late charges as set forth in Wells Fargo's proof of claim but were applied completely to attorneys' fees and costs while the creditor continued to charge the Debtor additional late fees and attorneys' fees with respect to the arrears in the proof of claim.

45. As a result of the above violation, the Defendant is liable to the Plaintiff for actual damages, punitive damages and legal fees.

### Count IV – Violation of the Automatic Stay

46. The allegations in paragraphs 1 through 45 of this complaint are realleged and incorporated herein by this reference.

47. The conduct of the Defendant in this case also constitutes a willful and intentional violation of the automatic stay provided for by Section 362(a)(3) of the Bankruptcy Code.

48. The Plaintiff alleges that the conduct of the Defendant in this case constitutes a clear and present contempt for the Orders and Rules of this Court, for the applicable sections of the Bankruptcy Code, and therefore this Court needs to send a clear message to the Defendant in the form of a substantial punitive damage award in order to secure it's attention and indicate the need for strict compliance with the law.

49. The Plaintiff also alleges that the conduct of the Defendant in this case also violates the Fair Debt Collection Practices Act and the Kentucky Unfair and Deceptive Practices Statute, and that such violations should be considered as "additional aggravating factors" in this case in support of the claim for punitive damages.

50. As a result of the above violation, the Defendant is liable to the Plaintiffs for actual damages, punitive damages and legal fees.

### Count V – Violation of Kentucky Consumer Protection Act

51. The allegations in paragraphs 1through 50 of this complaint are realleged and incorporated herein by this reference.

52. Wells Fargo is a "person" engaging in "trade" or "commerce" within the Commonwealth of Kentucky, as defined in KRS 367.110 by providing financial services to citizens of this Commonwealth.

53. Wells Fargo Bank is subject to KRS 367.170 which defines as "Unlawful Acts" (1) Unfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful. (2) For the purposes of this section, unfair shall be construed to mean unconscionable.

54. That this Court has jurisdiction over all state law claims in addition to violations of the US Bankruptcy Code pursuant Section 1367 of Title 28 of the United States Code.

55. As a result of the above violation, the Defendant is liable to the Plaintiffs for actual damages, punitive damages and legal fees.

### Count VI – Violations of the Fair Debt Collection Practices Act

56. The allegations in paragraphs 1through 55 of this complaint are realleged and incorporated

7

herein by this reference.

57. The foregoing acts and omissions by the Defendants constitute violations of the FDCPA, which include, but are not limited to, the following:

    a. The Defendant violated 15 U.S.C. § 1692f (1) by collecting or attempting to collect amounts not permitted by law and by otherwise using unfair and unconscionable methods; and
    b. The Defendant violated 15 U.S.C. § 1692 by sending the collection letters to the Plaintiff on the following dates:  March 13, 2009, April, 1, 2009, July 6, 2009, August 19, 2009, September 2, 2009, September 21, 2009, April 6, 2010 & May 4, 2010.

58. The communications referenced in paragraph 57 occurred after the Plaintiff had filed bankruptcy and given notice to the Defendant of representation by an attorney at law.  These contacts are in violations of 15 U.S.C. § 1692c(a)(3).

59. The Defendant was aware that the Plaintiff was represented as of October 25, 2007 when the Defendant filed a proof of claim in the base bankruptcy case.

60. The Defendant additionally violated the FDCPA by engaging in any conduct the natural consequences of which is to harass, oppress, or abuse any person in connection with the collection of a debt, 15 U.S.C. Section 1692d.

61. The Plaintiff is therefore entitled to an award of statutory damages and legal fees pursuant to 11 U.S.C. § 1692k.

**Count VII – Fraudulent Misrepresentation**

62. The allegations in paragraphs 1through 61 of this complaint are realleged and incorporated herein by this reference.

63. That the terms of the agreement entered into on June 25, 2004 between Wells Fargo and the Debtor, contained more fully in the mortgage to the Debtor's property located at 3026 Lynnwood Dr, detail the application of payments as follows:

    a. Application of Payments.  All payments under Paragraphs 1 & 2 shall be applied to lender as follows:

        i.   First to the mortgage insurance premium to be paid by the Lender to the Secretary or to the monthly charge by the secretary instead of the monthly mortgage insurance premium;
        ii.  Second.  To any taxes, special assessments, leasehold payments or ground rents, and fire flood and other hazard insurance premiums as required;
        iii. Third to interest due under the note; and

8

      iv.      Fourth to late charges under the note.

64. The Debtor avers that instead of applying her regular monthly mortgage payments in the manner described above, Wells Fargo paid legal fees, costs, and other corporate advance account liabilities prior to insurance, taxes, interest and principal.

65. When Wells Fargo made these representations it knew them to be false, and these representations were made by Wells Fargo with the intent to defraud and deceive the Plaintiff and with the intent to induce the Plaintiff to act in the manner herein alleged namely, continue to make regular monthly mortgage payments.

66. The Plaintiff, at the time these representations were made by the Defendant and at the time the Plaintiff took the actions herein alleged, was ignorant of the falsity of the Defendant's representations and believed them to be true.

67. As a result of the above violation, the Defendant is liable to the Plaintiffs for actual damages, punitive damages and legal fees

### Count VIII – Breach of Contract

68. The allegations in paragraphs 1through 67 of this complaint are realleged and incorporated herein by this reference.

69. That the terms of the agreement entered into on June 25, 2004 between Wells Fargo and the Debtor, contained more fully in the mortgage to the Debtor's property located at 3026 Lynnwood Dr, detail the application of payments as follows:

    a. Application of Payments.  All payments under Paragraphs 1 & 2 shall be applied to lender as follows:

        i.    First to the mortgage insurance premium to be paid by the Lender to the Secretary or to the monthly charge by the secretary instead of the monthly mortgage insurance premium;
        ii.   Second.  To any taxes, special assessments, leasehold payments or ground rents, and fire flood and other hazard insurance premiums as required;
        iii.  Third to interest due under the note; and
        iv.   Fourth to late charges under the note.

70. That, as more fully described above, the Defendant failed to apply regular monthly payments, supplemental monthly payments, and Trustee payments, in the proper manner according to the terms of the note.

71. That this misapplication of funds constitutes a breach of the mortgage contract and thus entitles the Plaintiff to damages

### Count XI- Violation of RESPA

72. The allegations in paragraphs 1through 71 of this complaint are realleged and incorporated herein by this reference.

73. The Defendant is the servicer of a "federally related mortgage loan" as that term is defined in Section 2602(1) of Title 12 of the United States Code.

74. The "qualified written request" was not acknowledged within 20 days of receipt as required by Section 2605(e)(1)(A) of Title 12 of the United States Code and Section 3500.21(e)(1) of Req. X.

75. The Defendant did not, within 60 days of receipt of the "qualified written request," provide the information requested and inform the Plaintiffs of its actions as required by Section 2605(e)(1)(B)(2) of Title 12 of the United States Code and Section 3500.21(e)(3) of Reg. X.

76. The Defendant has failed to comply with Section 2605 of Title 12 of the United States Code.

77. Pursuant to Section 2605(f) of Title 12 of the United States Code and Section 3500.21(f) of Reg. X, the Plaintiffs may recover of the Defendant actual damages, costs and reasonable attorney fees for each failure of the Defendant to comply with any part of Section 2605 of Title 12 of the United States Code.

### Count X—Violation of TILA 131(f)

78. The allegations in paragraphs 1through 77 of this complaint are realleged and incorporated herein by this reference.

79. On March 25, 2010 the Plaintiff sent a written request to Defendant pursuant to TILA 15 U.S.C. § 1641(f).

80. That request was responded to by the Defendant on April 19, 2010. In that response the Defendant failed to identify the name, address and telephone number of the owner of the promissory note signed by the Plaintiff.

81. Pursuant to the Housing and Economic Recovery act of 2008, Pub. L. 110-289, sec 2502(b), 122 Stat. 2857, amended 15 USC § 1640a, the amount of statutory damages for violations of the type alleged in this complaint range from an amount not less than $400.00 or greater than $4,000.00 of which the Plaintiff is entitled.

### Count XI – Pattern and Practice

82. The allegations in paragraphs 1 through 81 of this complaint are realleged and incorporated

herein by this reference.

83. Upon information and belief, the Defendant has engaged in a pattern and practice of tracking and charging undisclosed and improper fees during Chapter 13 cases and then attempting to collect those fees upon a mortgage refinance or after the case has been discharged and the debtor is not represented by an attorney or subject to the scrutiny and control of the Bankruptcy Court.

84. These fees are often collected during closings or refinances that occur post discharge where former Chapter 13 debtors want to sell their house or refinance their mortgage to further promote their post discharge fresh start.  Many times, instead of delaying the closing by contacting their attorney or filing something with the Bankruptcy Court, the former debtors will simply pay off the alleged fees.  It becomes worth it to pay the fees to prevent further prolonging the whole process.

85. Based on this pattern and practice, this Court should grant significant and substantial punitive damages sufficient enough to prevent the Defendant from continuing this pattern and practice and to deter its future conduct in the Eastern District of Kentucky.

86. The Plaintiff alleges that the imposition of a substantial punitive damage award is required in order to force the Defendant to comply with well-established bankruptcy law.

### Count XII - Intentional Infliction of Emotional Distress

87. The allegations in paragraphs 1 through 86 of this complaint are realleged and incorporated herein by this reference.

88. The recognition of the cause of action for Intentional Infliction of Emotional Distress was explicitly recognized in Kentucky in *Craft v. Rice* 671 S.W.2d 247 (Ky. 1984).  In *Stringer v. Wal-Mart*, 151 S.W.3d 781, 788 (Ky. 2004) the court determined set forth the elements for intentional inflection of emotional distress as follows:
    a.    the wrongdoer's conduct must be intentional or reckless;
    b.    the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality;
    c.    there must be a causal connection between the wrongdoer's conduct and the emotional distress; and
    d.    the emotional distress must be severe.

89. The Defendant, by engaging in an effort to collect fees from the Plaintiff which have not been earned or are not allowed by statute is a course of behavior that which is likely to result in severe emotional distress.

90. The Defendant intentionally and/or negligently interfered, physically or otherwise, with the solitude, seclusion, and financial security of the Plaintiff, by continually attempting to foreclose on the property when it neither had proper standing to enforce said note nor properly applied payments such that the default on the Plaintiff's account was inaccurate.

11

91. The Defendant intentionally and/or negligently caused harm to the Plaintiff's emotional well being by engaging in this highly offensive conduct thereby invading and intruding upon Plaintiff's privacy and compromising the Plaintiff's financial position.

92. The Defendant's grossly careless conduct unlawfully invaded plaintiff's personal privacy and proximately caused the Plaintiff to suffer actual damages. The Defendant's conduct was intentional, reckless and willful, and the Plaintiff is entitled to recover exemplary damages in an amount to be set by the trier of fact. The Plaintiff also seeks damages for the mental and emotional anguish distress that has been caused by continually having to defend herself in foreclosure proceedings that should not have continued or been permitted to be commenced.

93. As a result of the forgoing indifferent acts, the defendants are liable to the plaintiff for actual damages, punitive damages, legal fees and suit money.

WHEREFORE, the Plaintiff having set forth her claims for relief against the Defendant respectfully pray of the Court as follows:

A.    That the Plaintiff have and recover against the Defendant a sum to be determined by the Court in the form of actual damages;

B.    That the Plaintiff have and recover against the Defendant a sum to be determined by the Court in the form of punitive damages

C.    That the Plaintiff have and recover against the Defendant all reasonable legal fees and expenses incurred by their attorney;

D:    That the Automatic Stay be reinstated during the pendency of this action;

E.    That the underlying debt to Wells Fargo be forever canceled and discharged and the Defendant be ordered to release all liens on the residence of the debtors and mark "paid in full" on all loan documents with said documents to be delivered to the debtors with all liens duly canceled and released as an additional sanction provided for under Section 362(h) of Title 11 of the United States Code; and

F.    That this Court order the Defendant to pay to the Plaintiff her attorney's fees and costs and additional actual damages a sum to be determined by the Court for each failure to comply with any part of Section 2605 of Title 12 of the United States Code pursuant to Section 2605(f) of Title 12 of the United States Code and Section 3500.21(f) of Reg. X; and

G.    That the Plaintiff have such other and further relief as the Court may deem just and proper.

Respectfully Submitted,

BRIAN T. CANUPP, PSC

_____

Brian T. Canupp
Tiffany L. Yahr
322 Main Street
Paris, Kentucky 40361
859-988-9658
Brian@Canupplaw.com