### IN THE UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF KENTUCKY
### LEXINGTON DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| KELLI MATTOX JONES | ) | **CHAPTER 13 CASE NO.** |
| | ) | **07-51925** |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| KELLI MATTOX JONES | ) | **ADV. PROC. NO.** |
| | ) | **10-5041** |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| WELLS FARGO, NA | ) | |
| | ) | |
| Defendant. | ) | |

### PLAINTIFF'S FIRST REQUEST FOR
### PRODUCTION OF DOCUMENTS TO DEFENDANT

COMES NOW the above-named Debtor and Plaintiff herein, by and through her attorney of record, and herewith serve upon the Defendant in this case the following written interrogatories pursuant to the provisions of Rule 7033 of the Rules of Bankruptcy Procedure and Rule 33 of the Federal Rules of Civil Procedure and the following request for the production and inspection of documents pursuant to Rule 7034 of the Rules of Bankruptcy Procedure and Rule 34 of the Federal Rules of Civil Procedure as provided for and set forth in the foregoing rules. Answers to these Interrogatories must be furnished within forty-five (45) days of the service of the Summons and Complaint or within thirty (30) days of the service of these Interrogatories, whichever is later.

### PARTY DEFINITIONS

A.      "You" or "Your" means Wells Fargo, its agents, employees, attorneys, servants, predecessors and/or successors in interest and all others acting on its behalf.

B.      "Debtor/Plaintiff" means Kelli Mattox Jones.

C.      "Mortgage" means the deed of trust or security document securing the note in the amount of $92,547.00, dated June 25, 2004, and signed by Debtor/Plaintiff.

**D.**      "Property" means that real property owned by Debtor/Defendant, located at 3026 Lynwood Drive, Paris, Kentucky 40361 the collateral for subject mortgage.

<u>DEFINITIONS AND INSTRUCTIONS</u>

A.      If there is insufficient space after each interrogatory for you to provide a full and complete answer, then you should state your full and complete answer on a separate page, identify the page, and attach the page to your response as a properly identified and marked exhibit thereto.

B.      The term "Document" means all writings of any kind, including the originals and all other non-identical copies, whether different from the originals by reason of any notation made on such copies or otherwise, including but not limited to correspondence, memoranda, notes, diaries, desk or other calendars, statistics, letters, telegrams, minutes, business records, personal records, accountants' statements, account statements, contracts, reports, credit reports, studies, checks, statements, receipts, invoices, bills, return checks, summaries, pamphlets, books, inter-office and intra-office communications, notations of any sort of conversations or meetings, telephone call meetings or other communications, written agreements, bulletins, printed matter, computer printouts, teletypes, telefaxes, invoices, worksheets, all drafts, alterations, modifications, changes and amendments of any kind with respect to any of the foregoing, graphic or oral records or representations of any kind (including, without limitation, tapes, cassettes, discs, recordings, electronic mail records, computer memory records such as hard disk drives and master back-up tapes, diskettes, or other devices such as zip drive records).

C.      The term "act" as used herein includes acts of every kind and description.

D.      The term "identify" or "describe" when used in reference to a "document" means to state:

      a.  The type of document (e.g., letter, memorandum, report, electronic mail records, notes, etc.);
      b.  The date of the document;
      c.  The name of the parties or parties who originated the document, their past or present position with the defendants, their general duties and responsibilities, their current physical location with the company, and their e-mail, telephone number and telephone extension;
      d.  The name and address of the current custodian of the document;
      e.  The name and current address of each signatory thereon;
      f.  The reason, in detail, for the preparation of the document;
      g.  The subject or subjects covered by the document;
      h.  The names, business addresses and titles of the persons to whom the document writing was directed; and

i.  The name and address and title of each person who originated, read or received the document.

E.      The term "identify" as used herein in connection with a "person" or "persons" means to state the names, titles, the present employer of such "person" or "persons," the relationship of such person or persons to any of the defendants, and such person's current business address and business telephone number.

F.      The term "identify" as used herein with respect to or in connection with an "act" means to:

      a.    Furnish the date and place of the act;
      b.      Identify the person acting, the person for whom the act was performed, and the person against whom the act was directed; and
      c.    Describe in detail the act.

G.      The terms "describe" or "state" as used herein mean:

      a.    Describe or state fully by reference to underlying facts rather than by ultimate facts or conclusions of law;
      b.    Particularize as to the:
            i.      Time;
            ii.     Date;
            iii.    Manner; and
            iv.     Place.

H.      The term "oral communication" as used herein means and includes any face-to-face conversation, meeting, conference, telephone conversation, cell-phone conversation, computer conversation with voice mail, or any one for more of these or related devices.

I.      The term "person" or "persons" as used herein means and includes all natural persons, public and private corporations, associates, wholly owned affiliates or subsidiary corporations or any other form of a business association, and any other type of entity and the agents, employees, officers, deputies and representatives thereof.

J.      The terms "you" or "your" as used herein shall refer to any one or all of the named defendants and any related or affiliated companies associated in any way therewith.

K.      All requests shall be deemed to include any documents made by, held by, or maintained in the files of any predecessor, successor, employee, agent or assignee of either one or all of the defendants.

L.      The term "the transaction" or "the transactions" or "account" or "accounts" when used herein without qualification means the transactions and accounts between or among the debtors and the named defendants and all related activities and agents or assigns of either party.

3

M.     The term "accepted servicing practices" with respect to any Mortgage Loan, when used herein means those mortgage servicing practices (including collection procedures) of prudent mortgage banking institutions which service mortgage loans of the same type as such Mortgage Loan in the jurisdiction where the related Mortgaged Property is located, and which are in accordance with FNMA servicing practices and procedures, for MBS pool mortgages, as defined in the FNMA Guidelines including future updates.

N.     The term "adjustable rate mortgage loan" when used herein means any Mortgage Loan purchased pursuant to this Agreement as to which the related Mortgage Note contains a provision whereby the Mortgage Interest Rate is adjusted from time to time in accordance with the terms of such Mortgage Note.

O.     The term "agreement" when used herein means This Mortgage Loan Purchase and Servicing Agreement and all amendments hereof and supplements hereto.

P.     The term "ALTA" when used herein means "The American Land Title Association", its successors and assigns.

Q.     The term "appraised value" when used herein with respect to any mortgage loan, means the value of the related Mortgaged Property based upon the lesser of (i) the appraisal made for the originator at the time of origination of the Mortgage Loan and (ii) the purchase price of the Mortgaged Property at the time of origination of the Mortgage Loan, provided, however, that in the case of a Refinanced Mortgage Loan, such value is based solely upon the appraisal made at the time of origination of such Refinanced Mortgage Loan and further provided, however, in the case of a Mortgage Loan originated under the Seller's streamlined documentation program, such value may be based upon a prior appraisal that satisfies the requirements of the Seller's streamlined documentation program.

R.     The term "assignment of mortgage" when used herein means an assignment of the Mortgage, notice of transfer or equivalent instrument in recordable form, sufficient under the laws of the jurisdiction wherein the related Mortgaged Property is located to reflect the sale of the Mortgage to the Purchaser.

S.     The term "balloon mortgage loan" when used herein means any individual Mortgage Loan purchased pursuant to this Agreement wherein the Mortgage Note matures after seven years requiring a final and accelerated payment of the outstanding principal prior to full amortization.

T.     The term "balloon payment" when used herein means a payment of the unamortized principal balance of a Balloon Mortgage Loan in a single payment at the maturity of such Mortgage Loan that is substantially greater than the preceding Monthly Payment.

U.      The term "BIF" when used herein means "The Bank Insurance Fund", or any successor thereto.

V.      The term "business day" when used herein means any day other than (i) a Saturday or Sunday, or (ii) a day on which banking and savings and loan institutions, in the States of California, Texas or New York or the state in which the Servicer's servicing operations are located, are authorized or obligated by law or executive order to be closed.

W.      The term "cash liquidation" when used herein means recovery of all cash proceeds by the Servicer with respect to the termination of any defaulted Mortgage Loan other than a Mortgage Loan which became an REO Property, including all Primary Mortgage Insurance Proceeds, Other Insurance Proceeds, Liquidation Proceeds, Condemnation Proceeds and other payments or recoveries whether made at one time or over a period of time which the Servicer deems to be finally recoverable, in connection with the sale or assignment of such Mortgage Loan, trustee's sale, foreclosure sale or otherwise.

X.      The term "CD mortgage loan" when used herein means Any individual Mortgage Loan purchased pursuant to this Agreement which contains a provision whereby the interest rate on such Mortgage Loan is adjusted semi-annually based upon the weekly average yield on certificates of deposit.

Y.      The term "closing date" when used herein means the date this Agreement is executed and delivered and the date or dates on which the Purchaser from time to time shall purchase, and the Seller from time to time shall sell, the Mortgage Loans listed on the related Mortgage Loan Schedule with respect to the related Mortgage Loan Package.

Z.      The term "condemnation proceeds" when used herein means all awards or settlements in respect of a taking of an entire Mortgaged Property by exercise of the power of eminent domain or condemnation.

AA.     The term "consumer personal information" when used herein means any information, including, but not limited to, all personal information about a Mortgagor that is disclosed to any of the Seller, the Servicer or the Purchaser by or on behalf of a Mortgagor.

BB.     The term "convertible mortgage loan" when used herein means any individual Adjustable Rate Mortgage Loan purchased pursuant to this Agreement which contains a provision whereby the Mortgagor is permitted to convert the Mortgage Loan to a Fixed Rate Mortgage Loan in accordance with the terms of the related Mortgage Note.

CC.     The term "custodial account" when used herein means the separate account or accounts created and maintained pursuant to this Agreement, which shall be entitled "Wells Fargo, NA", in trust for the Purchaser and various Mortgagors, Conventional Mortgage Loans."

DD.    The term "custodial agreement" when used herein means the agreement between the Purchaser and the Custodian governing the retention of the Mortgage Files.

EE.    The term "custodian" when used herein means the custodian under the Custodial Agreement, or its successor in interest or assigns, or any successor to the Custodian under the Custodial Agreement, as therein provided.

FF.    The term "cut-off" date when used herein means the first day of the month in which the related Closing Date occurs.

GG.    The term "deleted mortgage loan" when used herein means a Mortgage Loan repurchased or replaced or to be replaced with a Qualified Substitute Mortgage Loan.

HH.    The term "determination date" when used herein means the 15th day of the month of the related Remittance Date or if such 15th day is not a Business Day, the Business Day immediately following such 15th day.

II.    The term "due date" when used herein means the day of the month on which the Monthly Payment is due on a Mortgage Loan, exclusive of any days of grace.

JJ.    The term "due period" when used herein means With respect to each Remittance Date, the period commencing on the second day of the month preceding the month of the Remittance Date and ending on the first day of the month of the Remittance Date.

KK.    The term "eligible account" when used herein means An account or accounts (i) maintained with a depository institution the short term debt obligations of which are rated by Standard & Poor's at least A-1+, by Fitch at least F-1, and by Moody's at least P-1 at the time of any deposit therein, (ii) the deposits of which are fully insured by the FDIC, (iii) maintained in a parent, affiliate or subsidiary of the Seller provided that such account satisfies the requirements of (i) or (ii) above or (iv) maintained with a trust account or accounts maintained with a federal or state chartered depository institution or trust company acting in its fiduciary capacity.

LL.    The term "equity take-out refinanced mortgage loan" when used herein means A Mortgage Loan used to refinance an existing mortgage loan, the proceeds of which were in excess of the sum of (i) the unpaid principal balance of the existing mortgage loan; and (ii) the lesser of (A) two percent (2%) of the unpaid principal balance of the existing mortgage loan or (B) $2000.

MM.    The term "escrow account" when used herein means the separate trust account or accounts created and maintained pursuant to this Agreement which shall be entitled "Wells Fargo, NA", in trust for the Purchaser and various Mortgagors, Conventional Mortgage Loans."

NN.    The term "event of default" when used herein means the amounts constituting ground rents, taxes, assessments, water rates, mortgage insurance premiums, fire and

hazard insurance premiums and other payments required to be escrowed by the Mortgagor with the mortgagee pursuant to any Mortgage Loan.

OO.   The term "fair market value" when used herein means with respect to any Mortgage Loan, the market value of the related Mortgaged Property as mutually agreed upon by the Servicer and the Purchaser. In the event the Servicer and the Purchaser disagree as to such Fair Market Value, the Servicer shall have the option to select an appraiser from a list of three independent appraisers selected by the Purchaser, each of whom meets the minimum FNMA or FHLMC requisite qualifications for appraisers. Such appraiser shall determine the Fair Market Value of the Mortgaged Property in accordance with the then current guidelines for the Seller's "full documentation program". Such appraisal shall be in a form acceptable to FNMA or FHLMC and shall be conclusive for the purposes of determining the Fair Market Value of the Mortgaged Property. The fee for such appraisal shall be paid by the Servicer, except in the event such fee is incurred in connection with calculating the Termination Fee in which case the Purchaser shall pay the fee for such appraisal.

PP.   The term "FDIC" when used herein means the Federal Deposit Insurance Corporation, or any successor thereto.

QQ.   The term "FHLMC" when used herein means Freddie Mac, formerly known as The Federal Home Loan Mortgage Corporation, or any successor organization.

RR.   The term "fidelity bond" when used herein means a fidelity bond to be maintained by the Servicer pursuant to Subsection 11.12.

SS.   The term "FIRREA" when used herein means the Financial Institutions Reform, Recovery, and Enforcement Act of 1989.

TT.   The term "Fitch" when used herein means Fitch Investors Services, Inc.

UU.   The term "fixed rate mortgage loan" when used herein means any individual Mortgage Loan purchased pursuant to this Agreement wherein the Mortgage Interest Rate set forth in the Mortgage Note is fixed for the term of such Mortgage Loan, including any Balloon Mortgage Loan.

VV.   The term "FNMA" when used herein means Fannie Mae, formerly known as The Federal National Mortgage Association, or any successor organization.

WW.   The term "FNMA Guidelines" when used herein means the Fannie Mae Sellers' Guide and the Fannie Mae Servicers' Guide and all amendments or additions thereto, including, but not limited to, future updates thereof.

XX.   The term "funding deadline" when used herein means with respect to each Closing Date, one o'clock p.m. (1:00 p.m.) New York time, or such other time mutually agreed to by the Purchaser and the Seller.

YY.     The term "gross margin" when used herein means with respect to each Adjustable Rate Mortgage Loan, the fixed percentage amount set forth in the related Mortgage Note which amount is added to the Index in accordance with the terms of the related Mortgage Note to determine on each Interest Adjustment Date, the Mortgage Interest Rate for such Adjustable Rate Mortgage Loan.

ZZ.     The term "HUD" when used herein means The Department of Housing and Urban Development or any federal agency or office thereof which may from time to time succeed to the functions thereof.

AAA.   The term "index" when used herein means with respect to any Adjustable Rate Mortgage Loan, the index identified on the Mortgage Loan Schedule and set forth in the related Mortgage Note for the purpose of calculating the Mortgage Interest Rate thereon.

BBB.   The term "information diskette" when used herein means a diskette or electronic file delivered by the Seller to the Purchaser, or an electronic data transfer from the Seller to the Purchaser, in respect of each Mortgage Loan Package which shall contain: (i) the information necessary for the Mortgage Loan Schedule and (ii) the date the last Monthly Payment was actually applied to the unpaid principal balance.

CCC.   The term "insurance proceeds" when used herein means with respect to each Mortgage Loan, proceeds of insurance policies insuring the Mortgage Loan or the related Mortgaged Property.

DDD.   The term "interest adjustment date" when used herein means with respect to an Adjustable Rate Mortgage Loan, the date on which an adjustment to the Mortgage Interest Rate on a Mortgage Note becomes effective.

EEE.    The term "interest only mortgage loan" when used herein means a Mortgage Loan which requires only payments of interest (and not principal) for a period of time specified in the related Mortgage Note.

FFF.    The term "late collections" when used herein means with respect to any Mortgage Loan, all amounts received during any Due Period, whether as late payments of Monthly Payments or as Liquidation Proceeds, Condemnation Proceeds, Primary Mortgage Insurance Proceeds, Other Insurance Proceeds, proceeds of any REO Disposition or otherwise, which represent late payments or collections of Monthly Payments due but delinquent for a previous Due Period and not previously recovered.

GGG.   The term "lender PMI mortgage loan" when used herein means any individual Mortgage Loan subject to an LPMI Policy.

HHH.  The term "LIBOR mortgage loan" when used herein means any individual Mortgage Loan purchased pursuant to this Agreement which contains a provision whereby the interest rate on such Mortgage Loan is adjusted semi-annually or annually

based upon the rate per annum equal to the average of interbank offered rates for six-month or one year, as applicable, U.S. Dollar denominated deposits in the London Market as published in The Wall Street Journal.

III.    The term "lifetime mortgage interest rate cap" when used herein means with respect to each Adjustable Rate Mortgage Loan, the absolute maximum Mortgage Interest Rate payable, above which the Mortgage Interest Rate cannot be adjusted.

JJJ.    The term "liquidation proceeds" when used herein means amounts, other than Primary Mortgage Insurance Proceeds, Condemnation Proceeds and Other Insurance Proceeds, received by the Servicer in connection with the liquidation of a defaulted Mortgage Loan through trustee's sale, foreclosure sale or otherwise, other than amounts received following the acquisition of an REO Property pursuant to Subsection 11.13.

KKK.   The term "Loan-to-Value Ratio or LTV" when used herein means with respect to any Mortgage Loan, the ratio of the outstanding principal amount of the Mortgage Loan as of the date of determination to the Appraised Value of the related Mortgaged Property.

LLL.   The term "LPMI Fee" when used herein means with respect to each Lender PMI Mortgage Loan, the portion of the Mortgage Interest Rate as set forth on the related Mortgage Loan Schedule (which shall be payable solely from the interest portion of Monthly Payments, Insurance Proceeds, Condemnation Proceeds or Liquidation Proceeds), which, during such period prior to the required cancellation of the LPMI Policy, shall be used to pay the premium due on the related LPMI Policy.

MMM.The term "LPMI Policy" when used herein means with respect to a Lender PMI Mortgage Loan, a policy of primary mortgage guaranty insurance issued by a Qualified Insurer pursuant to which the related premium is to be paid by the Servicer from payments of interest made by the Mortgagor in an amount as is set forth in the related Mortgage Loan Schedule.

NNN.   The term "MERS" when used herein means Mortgage Electronic Registration Systems, Inc., a corporation organized and existing under the laws of the State of Delaware, or any successor thereto.

OOO.   The term "MERS Mortgage Loan" when used herein means any Mortgage Loan registered with MERS on the MERS System.

PPP.    The term "MERS System" when used herein means the system of recording transfers of mortgages electronically maintained by MERS.

QQQ.   The term "MIN" when used herein means the Mortgage Identification Number for any MERS Mortgage Loan.

RRR:  The term "MOM Loan" when used herein means any Mortgage Loan as to which MERS is acting as mortgagee, solely as nominee for the originator of such Mortgage Loan and its successors and assigns.

SSS:  The term "monthly advance" when used herein means the aggregate of the advances made by the Servicer on any Remittance Date pursuant to Subsection 11.19.

TTT.  The term "monthly payment" when used herein means the scheduled monthly payment of principal and interest on a Mortgage Loan.

UUU.  The term "Moody's" when used herein means Moody's Investors Service, Inc.

VVV.  The term "mortgage" when used herein means the mortgage, deed of trust or other instrument securing a Mortgage Note, which creates a first lien on an unsubordinated estate in fee simple in real property securing the Mortgage Note; except that with respect to real property located in the state of Hawaii, the mortgage, deed of trust or other instrument securing the Mortgage Note may secure and create a first lien upon a leasehold estate of the Mortgagor.

WWW.     The term "mortgage file" when used herein means with respect to each Mortgage Loan, the documents pertaining thereto specified in Exhibit 5 and any additional documents required to be added to the Mortgage File pursuant to this Agreement.

XXX.  The term "mortgage impairment insurance policy" when used herein means a mortgage impairment or blanket hazard insurance policy as required by Subsection 11.11.

YYY.  The term "mortgage interest rate" when used herein means the annual rate at which interest accrues on any Mortgage Loan, exclusive of any primary mortgage insurance premium and, with respect to an Adjustable Rate Mortgage Loan, as adjusted from time to time in accordance with the provisions of the related Mortgage Note and in compliance with the related Lifetime Mortgage Interest Rate Cap, Periodic Rate Cap and negative amortization features, if any, of the related Mortgage Note.

ZZZ.  The term "mortgage loan" when used herein means an individual Mortgage Loan which is the subject of this Agreement, each Mortgage Loan originally sold and subject to this Agreement being identified on the related Mortgage Loan Schedule, which Mortgage Loan includes without limitation the Mortgage File, the Monthly Payments, Principal Prepayments, Liquidation Proceeds, Condemnation Proceeds, Insurance Proceeds, REO Disposition proceeds, and all other rights, benefits, proceeds and obligations arising from or in connection with such Mortgage Loan.

A1.  The term "mortgage loan documents" when used herein means the documents contained in the Mortgage File.

B1.     The term "mortgage loan package" when used herein means the pool of Mortgage Loans sold to the Purchaser on the related Closing Date.

C1.     The term "mortgage loan remittance rate" when used herein means with respect to each Mortgage Loan, the interest rate payable to the Purchaser on each Remittance Date which shall equal the Mortgage Interest Rate less the Servicing Fee and any pool insurance policy premiums (including, without limitation, LPMI Fees), if applicable.

D1.     The term "mortgage loan schedule" when used herein means the schedule of Mortgage Loans to be prepared by the Seller or Purchaser (at Seller's option) from information contained on an Information Diskette and other information delivered by the Seller to the Purchaser in respect of each Mortgage Loan Package, setting forth the following information with respect to each Mortgage Loan: (1) the Seller's Mortgage Loan identifying number; (2) the Mortgagor's name; (3) the street address of the Mortgaged Property including the city, state and zip code; (4) a code indicating whether the Mortgaged Property is the Mortgagor's primary residence, secondary residence or an investor property; (5) the type of residential units constituting the Mortgaged Property (i.e., detached single family, two-to-four-family, condominium units, etc.); (6) the original months to maturity or the remaining months to maturity from the Cut-off Date, in any case based on the original amortization schedule and, if different, the maturity expressed in the same manner but based on the actual amortization schedule; (7) the Appraised Value (including the purchase price of the Mortgaged Property, if applicable) of the Mortgaged Property and the Loan- to-Value Ratio at origination; (8) the Mortgage Interest Rate at origination; (9) the date on which the initial Monthly Payment was due on the Mortgage Loan; (10) the stated maturity date; (11) the amount of the Monthly Payment as of the Cut-off Date; (12) the original principal amount of the Mortgage Loan; (13) the principal balance of the Mortgage Loan as of the close of business on the Cut-off Date, after deduction of payments of principal due on or before the Cut-off Date whether or not collected; (14) with respect to an Adjustable Rate Mortgage Loan, the first Interest Adjustment Date after each of the related origination date and related Cut-Off Date; (15) with respect to an Adjustable Rate Mortgage Loan, the Gross Margin; (16) a code indicating the purpose of the loan (i.e., purchase, rate and term refinance, equity take-out refinance); (17) with respect to an Adjustable Rate Mortgage Loan, the Lifetime Mortgage Interest Rate Cap under the terms of the Mortgage Note; (18) with respect to an Adjustable Rate Mortgage Loan other than a NegAm Mortgage Loan, the Periodic Rate Cap; (19) the Servicing Fee Rate; (20) a code indicating the documentation style (i.e., full, alternative, reduced or streamlined); (21) a code indicating whether the Mortgage Loan is Convertible or Non-Convertible, (22) a code indicating whether the Mortgage Loan is a Balloon, Interest Only, LIBOR, NegAm, CD, Fixed, 3/1 ARM, 5/1 ARM, 7/1 ARM, 10/1 ARM or Treasury Mortgage Loan; (23) with respect to a Fixed Rate Mortgage Loan, a code indicating whether the Mortgage Loan contains a temporary "buydown" provision and, if so, the term and type of buydown; (24) the Primary Mortgage Insurance Policy number, if any, which number (or an additional code) shall identify the applicable Primary Mortgage Insurance Policy provider and the coverage amount; (25) with respect to a NegAm Mortgage Loan, the first Payment Adjustment Date; (26) a code indicating whether the Mortgage Loan is a MERS Mortgage Loan and,

if so, the corresponding MIN; (27) a code indicating whether the Mortgage Loan is a Lender PMI Mortgage Loan and, in the case of any Lender PMI Mortgage Loan, the LPMI Fee; (28) the Mortgage Interest Rate as of the Cut-off Date; (29) with respect to an Adjustable Rate Mortgage Loan, the related initial Periodic Rate Cap; (30) the date on which the Mortgage Loan was originated; (31) a code indicating whether the Mortgage Loan is subject to a prepayment penalty and if so, the terms of such prepayment penalty; (32) the Mortgagor's credit score at the time of origination of the Mortgage Loan; (33) the paid through date; (34) with respect to each Mortgage Loan originated more than six months prior to the related Closing Date, the number of times in the previous twelve month period preceding the related Closing Date that any Monthly Payment has been received thirty or more days after its Due Date; and (35) any other information to be listed as agreed to between the Seller and the Purchaser. With respect to the Mortgage Loans in the aggregate, the Mortgage Loan Schedule shall set forth the following information, as of the related Cut-off Date: (1) the number of Mortgage Loans; (2) the current principal balance of the Mortgage Loans; and (3) the weighted average Mortgage Interest Rate of the Mortgage Loans. Such schedule may be delivered in magnetic tape or hard copy form.

E1.     The term "mortgage note" when used herein means the note or other evidence of the indebtedness of a Mortgagor secured by a Mortgage.

F1.     The term "mortgaged property" when used herein means the real property (or leasehold estate, if applicable, in the case of a Mortgage Loan in the state of Hawaii) securing repayment of the debt evidenced by a Mortgage Note.

G1.     The term "mortgagor" when used herein means the obligor on a Mortgage Note.

H1.     The term "NegAm mortgage loan" when used herein means any individual Mortgage Loan purchased pursuant to this Agreement which permits negative amortization and which contains a provision whereby the interest rate on such Mortgage Loan is adjusted monthly.

I1.     The term "negative amortization cap" when used herein means with respect to each NegAm Mortgage Loan, the provision of each Mortgage Note which provides for an absolute maximum percentage of the original principal amount of such Mortgage Loan that the outstanding principal amount of the Mortgage Loan may reach as a result of negative amortization which shall percentage shall not be greater than permitted under applicable state law.

J1.     The term "non-convertible mortgage loan" when used herein means any individual Adjustable Rate Mortgage Loan purchased pursuant to this Agreement which does not contain a provision whereby the Mortgagor may convert the Mortgage Loan to a fixed-rate mortgage loan.

K1.     The term "nonrecoverable advance" when used herein means any Monthly Advance or Servicing Advance previously made or proposed to be made in respect of a

Mortgage Loan which, in the good faith judgment of the Servicer using Accepted Servicing Practices, will not or, in the case of a proposed advance, would not, be ultimately recoverable from related Late Collections, Insurance Proceeds, Other Insurance Proceeds, Liquidation Proceeds or otherwise from such Mortgage Loan.

LI.     The term "officer's certificate" when used herein means a certificate signed by the Chairman of the Board or the Vice Chairman of the Board or a President or a Vice President and by the Treasurer or the Secretary or one of the Assistant Treasurers or Assistant Secretaries of the Seller or the Servicer, as applicable, and delivered to the Purchaser.

M1.     The term "opinion of counsel" when used herein means a written opinion of counsel, who may be an employee of the party on behalf of whom the opinion is being given, reasonably acceptable to the Purchaser.

N1.     The term "other insurance proceeds" when used herein means proceeds of any title policy, hazard policy, pool policy or other insurance policy covering a Mortgage Loan, other than the Primary Mortgage Insurance Policy, if any, to the extent such proceeds are not to be applied to the restoration of the related Mortgaged Property or released to the Mortgagor in accordance with the procedures that the Servicer would follow in servicing mortgage loans held for its own account.

O1.     The term "OTS" when used herein means the Office of Thrift Supervision, its successors and assigns.

P1.     The term "pass-through transfer" when used herein means the sale or transfer of some or all of the Mortgage Loans to a trust to be formed as part of a publicly or privately traded pass-through transaction retaining the Seller as "servicer" thereunder.

Q1.     The term "payment adjustment date" when used herein means with respect to each Adjustable Rate Mortgage Loan, the date on which an adjustment to the Monthly Payment pursuant to the related Mortgage Note becomes effective.

R1.     The term "periodic payment cap" when used herein means with respect to each NegAm Mortgage Loan, the provision of each Mortgage Note which permits limiting any change in the amount of the adjusted Monthly Payment due on any Payment Adjustment Date to an amount not greater than a certain percentage (set forth in the Mortgage Note) of the amount of the Monthly Payment due on the preceding Due Date. The Periodic Payment Cap for a NegAm Mortgage Loan shall not exceed the limits imposed by applicable state law.

S1.     The term "periodic rate cap" when used herein means with respect to each Adjustable Rate Mortgage Loan other than a NegAm Mortgage Loan, the provision of each Mortgage Note which provides for an absolute maximum amount by which the Mortgage Interest Rate therein may increase or decrease on an Interest Adjustment Date

above the Mortgage Interest Rate previously in effect, equal to the rate set forth on the Mortgage Loan Schedule per adjustment.

T1.    The term "person" when used herein means any individual, corporation, partnership, joint venture, association, joint-stock company, limited liability company, trust, unincorporated organization or government or any agency or political subdivision thereof.

U1.    The term "prepayment interest shortfall amount" when used herein means with respect to any Mortgage Loan that was subject to a Principal Prepayment in full or in part during any Due Period, which Principal Prepayment was applied to such Mortgage Loan prior to such Mortgage Loan's Due Date in such Due Period, the amount of interest (net of the related Servicing Fee) that would have accrued on the amount of such Principal Prepayment during the period commencing on the date as of which such Principal Prepayment was applied to such Mortgage Loan and ending on the day immediately preceding such Due Date, inclusive.

V1.    The term "primary mortgage insurance policy" when used herein means a policy of primary mortgage guaranty insurance issued by a Qualified Insurer which conforms in all respects to the description set forth in Subsection 7.02(xxxi) herein.

W1.    The term "primary mortgage insurance proceeds" when used herein means proceeds of any Primary Mortgage Insurance Policy.

X1.    The term "principal payment" when used herein means any payment or other recovery of principal on a Mortgage Loan which is received in advance of its scheduled Due Date which is not accompanied by an amount of interest representing scheduled interest due on any date or dates in any month or months subsequent to the month of prepayment.

Y1.    The term "principal prepayment period" when used herein means as to any Remittance Date, period commencing on the 2nd day of the calendar month preceding the month in which such Remittance Date occurs and ending on the 1st day of the month in which such Remittance Date occurs, both inclusive.

Z1.    The term "purchase price" when used herein means the price paid on the related Closing Date by the Purchaser to the Seller in exchange for the Mortgage Loans purchased on such Closing Date as calculated in Section 4 of this Agreement.

A2.    The term "purchase price and term letters" when used herein means those certain letter agreements executed on or after the date hereof setting forth the general terms and conditions of each transaction contemplated herein and identifying the loan characteristics of the Mortgage Loans to be purchased from time to time hereunder, by and between the Seller and the Purchaser. All of the individual Purchase Price and Terms Letters shall collectively be referred to as the "Purchase Price and Terms Letter".

B2.    The term "purchaser" when used herein means Wells Fargo, NA. or its successor in interest or any successor to or assignee of the Purchaser under this Agreement as herein provided.

C2.    The term "qualified insurer" when used herein means an insurance company duly qualified as such under the laws of the states in which the Mortgaged Properties are located, duly authorized and licensed in such states to transact the applicable insurance business and to write the insurance provided, approved as an insurer by FNMA and FHLMC and whose claims paying ability is rated in one of the two highest rating categories by the Standard & Poor's or Moody's with respect to primary mortgage insurance and in one of the two highest rating categories by A.M. Best Company, Inc. with respect to hazard and flood insurance.

D2.    The term "qualified substitute mortgage loan" when used herein means a mortgage loan eligible to be substituted by the Seller for a Deleted Mortgage Loan which must, on the date of such substitution, (i) have an unpaid principal balance, after deduction of all scheduled payments due in the month of substitution (or in the case of a substitution of more than one (1) mortgage loan for a Deleted Mortgage Loan, an aggregate principal balance), not in excess of the unpaid principal balance of the Deleted Mortgage Loan (the amount of any shortfall will be deposited in the Custodial Account by the Seller in the month of substitution); (ii) have a Mortgage Interest Rate not less than, and not more than 1% greater than, the Mortgage Interest Rate of the Deleted Mortgage Loan; (iii) have a remaining term to maturity not later than, and not more than one year earlier than, the maturity date of the Deleted Mortgage Loan; (iv) comply with each representation and warranty (respecting individual Mortgage Loans) set forth in Subsection 7.02 hereof; and (v) be the same type of Mortgage Loan as the Deleted Mortgage Loan.

E2.    The term "reconstitution agreements" when used herein means the agreement or agreements entered into by the Servicer and the Purchaser and/or certain third parties on the Reconstitution Date or Dates with respect to any or all of the Mortgage Loans serviced hereunder, in connection with a Whole Loan Transfer or a Pass-Through Transfer as set forth in Section 12. Such agreement or agreements shall prescribe the rights and obligations of the Seller in servicing the related Mortgage Loans.

F2.    The term "reconstitution date" when used herein means the date or dates on which any or all of the Mortgage Loans serviced under this Agreement shall be removed from this Agreement and reconstituted as part of a Whole Loan Transfer or Pass-Through Transfer pursuant to Section 12 hereof.

G2.    The term "record date" when used herein means the close of business of the last Business Day of the month preceding the month of the related Remittance Date.

H2.    The term "refinanced mortgage loan" when used herein means a Mortgage Loan which was made to a Mortgagor who owned the Mortgaged Property prior to the

origination of such Mortgage Loan and the proceeds of which were used in whole or part to satisfy an existing mortgage.

I2.     The term "relief act" when used herein means the Service members Civil Relief Act, or any similar state or local law.

J2.     The term "relief act interest shortfall" when used herein means with respect to any Remittance Date, for any Mortgage Loan with respect to which there has been a reduction in the amount of interest collectable thereon for the most recently ended Due Period as a result of the application of the Relief Act, the amount by which (i) interest collectable on such Mortgage Loan during such Due Period is less than (ii) one month's interest on the Stated Principal Balance of such Mortgage Loan at the related Mortgage Interest Rate before giving effect to the application of the Relief Act.

K2.     The term "REMIC" when used herein means a "real estate mortgage investment conduit" within the meaning of Section 860D of the Internal Revenue Code.

L2.     The term "remittance date" when used herein means the eighteenth (18th) day of any month, beginning with the First Remittance Date, or if such eighteenth (18th) day is not a Business Day, the first Business Day immediately following.

M2.     The term "REO account" when used herein means the account created and maintained pursuant to Subsection 11.13, which account shall be an Eligible Account.

N2.     The term "REO disposition" when used herein means the final sale by the Seller of any REO Property.

O2.     The term "REO property" when used herein means a Mortgaged Property acquired by the Servicer on behalf of the Purchaser as described in Subsection 11.13.

P2.     The term "Repurchase Price" when used herein means with respect to any Mortgage Loan, a price equal to (i) the Stated Principal Balance of the Mortgage Loan plus (ii) interest on such Stated Principal Balance at the Mortgage Loan Remittance Rate from the last date through which interest has been paid and distributed to the Purchaser to the date of repurchase, less amounts received or advanced in respect of such repurchased Mortgage Loan which are being held in the Custodial Account for distribution in the month of repurchase plus (iii) with respect to any Mortgage Loan included in a Pass-Through Transfer, any costs incurred by the related trust in connection with the breach of any predatory and abusive lending law by such Mortgage Loan.

Q2.     The term "SAIF" when used herein means the Savings Association Insurance Fund, or any successor thereto.

R2.     The term "seller" when used herein means the loan originator or any successor to the Seller under this Agreement as provided herein.

S2.     The term "servicer" when used herein means master servicer or primary servicer under the Pooling and Servicing Agreement or any successor to or assignee of the Servicer under this Agreement as provided herein.

T2.     The term "servicing advances" when used herein means all customary, reasonable and necessary "out of pocket" costs and expenses incurred in the performance by the Servicer of its servicing obligations, including, but not limited to, the cost of (i) the preservation, restoration and protection of the Mortgaged Property, (ii) any enforcement or judicial proceedings, including foreclosures, (iii) the management and liquidation of the REO Property and (iv) compliance with the obligations under Subsection 11.08.

U2.     The term "servicing fee" when used herein means with respect to each Mortgage Loan, the amount of the annual fee the Purchaser shall pay to the Servicer, which shall, for a period of one full month, be equal to one-twelfth of the product of (a) the Servicing Fee Rate and (b) the Stated Principal Balance of such Mortgage Loan. Such fee shall be payable monthly, computed on the basis of the same principal amount and period respecting which any related interest payment on a Mortgage Loan is computed. The obligation of the Purchaser to pay the Servicing Fee is limited to, and the Servicing Fee is payable solely from, the interest portion of such Monthly Payment collected by the Servicer, or as otherwise provided under Subsection 11.24 hereof. With respect to REO Property, the Servicing Fee shall be payable to the Servicer through REO Disposition in accordance with Subsection 11.13, which Servicing Fee payable in respect of any REO Property shall be based upon the Stated Principal Balance of the related Mortgage Loan at the time of foreclosure, as reduced by any income or proceeds received by Purchaser in respect of such REO Property and applied to reduce the outstanding principal balance of the foreclosed Mortgage Loan.

V2.     The term "servicing fee rate" when used herein means with respect to each transaction contemplated herein, the per annum rate set forth as such in the related Purchase Price and Terms Letter.

W2.     The term "servicing file" when used herein means with respect to each Mortgage Loan, the documents pertaining to such Mortgage Loan retained by the Servicer, consisting of copies or microfilmed copies, as the case may be, of each of the documents in the Mortgage File and originals of each of the other documents set forth in Exhibit 6 hereto. Such documents may be maintained on microfilm (provided that the Servicer shall deliver to the Purchaser an electronic copy of the Servicing File upon the Purchaser's request).

X2.     The term "servicing officer" when used herein means any officer of the Servicer involved in, or responsible for, the administration and servicing of the Mortgage Loans whose name appears on a list of servicing officers furnished by the Servicer to the Purchaser upon request, as such list may from time to time be amended.

Y2.     The term "Standard & Poor's" when used herein means Standard & Poor's Ratings Services, a division of the McGraw-Hill Companies, Inc.

Z2.    The term "stated principal balance" when used herein means with respect to each Mortgage Loan as of the date of such determination: (i) the unpaid principal balance of the Mortgage Loan as of the Cut-off Date after giving effect to payments of principal due on or before such date, whether or not received, and without giving effect to payments received on or before such date in respect of payments due after such date for application on the scheduled Due Date, minus (ii) all amounts previously distributed to the Purchaser with respect to the related Mortgage Loan representing payments or recoveries of principal or advances in lieu thereof.

A3.    The term "termination fee" when used herein means the amount paid to the Servicer by the Purchaser in the event of the Servicer's termination without cause, as servicer. Such fee shall equal 2% of (a) the then current unpaid principal balance of the Mortgage Loans, and (b) in the case of REO Property, the lesser of (i) 100% of the Stated Principal Balance of the Mortgage Loan encumbering the Mortgaged Property at the time such Mortgaged Property was acquired and became REO Property or (ii) the Fair Market Value of the REO Property at the time of termination.

B3.    The term "treasury mortgage loan" when used herein means any individual Adjustable Rate Mortgage Loan purchased pursuant to this Agreement which contains a provision whereby the interest rate on such Mortgage Loan is adjusted annually based upon the weekly average yield on U.S. Treasury securities.

C3.    The term "updated loan-to-value ratio" when used herein means with respect to any Mortgage Loan, the outstanding principal balance of such Mortgage Loan as of the date of determination divided by the Value of the related Mortgaged Property as determined by the appraisal made for the originator at the time of origination of the Mortgage Loan or in the event that an appraisal was made since the origination of the Mortgage Loan then the latest appraisal of the Mortgaged Property. Such appraisal shall (i) be in a form acceptable to FNMA and FHLMC and (ii) meet the then current guidelines for the Seller's so called "full documentation" program.

D3.    The term "whole loan agreement" when used herein means any Reconstitution Agreement in respect of a Whole Loan Transfer.

E3.    The term "whole loan transfer" when used herein means the sale or transfer by Purchaser of some or all of the Mortgage Loans in a whole loan or participation certificate format pursuant to a Reconstitution Agreement retaining the Servicer as "servicer" thereunder.

F3.    If the space provided below each interrogatory is not sufficient for your answer, then use additional sheets, numbered consecutively after each such interrogatory, and inserted in the proper order of all copies filed and served.  For example, in the case of Interrogatory number 1, any additional sheets for your answers would be numbered as 1-A, 1-B, 1-C, etc.

G3.     Each of the following requests for production of documents and interrogatories is intended to be a continuing request to produce and answer.  As a result, the Plaintiffs hereby demand that, in the event that at any later date you obtain any additional facts, or form any conclusions, opinions or contentions different from those set forth in your responses herein, then you shall amend your answers to such responses and document production promptly and sufficiently in advance of any trial date, to fully set forth such differences and to produce and documents in connection therewith.

## REQUEST FOR PRODUCTION OF DOCUMENTS

1.     Produce all documents used to answer Interrogatories propounded by the Plaintiff.

RESPONSE:

2.     Produce documents showing that this mortgage account has been credited, debited, adjusted, amortized and charged correctly and disclosed fully commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof.

RESPONSE:

3.     Produce documents showing that interest and principal have been properly calculated and applied to this loan.

RESPONSE:

4.    Produce documents showing that any principal balance has been properly calculated, amortized and accounted for.

RESPONSE:

5.    Produce documents showing that no charges, fees or expenses, not obligated by debtor in any agreement, have been charged, assessed or collected from this account or any other related account arising out of the subject loan transaction.

RESPONSE:

6.    Produce any and all documents that give Wells Fargo Home Mortgage the authority to prosecute matters in the bankruptcy court on behalf of a group of investors.

RESPONSE:

7.    Produce any certificated or uncertificated security used for the funding of this account.

RESPONSE:

8.    Produce any and all "Pool Agreement(s)" or "servicing agreements" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any government sponsored entity (hereinafter "GSE") or other party.

RESPONSE:

9.    Produce any and all "Deposit Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto, and any GSE or other party.

RESPONSE:

10.   Produce any and all "Servicing Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party.

RESPONSE:

11.   Produce any and all "Custodial Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and my GSE or other party.

RESPONSE:

12.   Produce any and all "Master Purchasing Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party.

RESPONSE:

13.   Produce any and all "Issuer Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party.

RESPONSE:

14.   Produce any and all "Commitment to Guarantee" agreement(s) between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party.

RESPONSE:

15.    Provide the Original Note, Mortgage, Riders, HUD-1, Settlement
Statement, Notice of Right to Cancel, Truth in Lending Disclosure Statement, and all
other documents executed by the Mortgagors at closing for inspection.

RESPONSE:

16.    Produce any and all "Release of Document" agreement(s) between the
nominal lender at the loan closing and any party or parties who could claim an interest in
the loan closing or documents pertaining thereto and any GSE or other party.

RESPONSE:

17.    Produce any and all "Master Agreement for Servicer's Principal and
Interest Custodial Account" between the nominal lender at the loan closing and any party
or parties who could claim an interest in the loan closing or documents pertaining thereto
and any GSE or other party.

RESPONSE:

18.    Produce any and all "Servicer's Escrow Custodial Account" between the
nominal lender at the loan closing and any party or parties who could claim an interest in
the loan closing or documents pertaining thereto and any GSE or other party.

RESPONSE:

19.    Produce any and all "Release of Interest" agreement(s) between the
nominal lender at the loan closing and any party or parties who could claim an interest in
the loan closing or documents pertaining thereto and any GSE or other party.

RESPONSE:

20.    Produce any Trustee agreement(s) between the nominal lender at the loan
closing and any party or parties who could claim an interest in the loan closing or
documents pertaining thereto and trustee(s) regarding this account or pool accounts with
any GSE or other party.

RESPONSE:

21.   Produce copies of the front/back of any documentation evidencing any trust relationship regarding the Mortgage/Deed of Trust <u>and</u> any Note in this matter.

RESPONSE:


22.   Produce copies of front/back of any and all document(s) establishing any Trustee of record for the Mortgage/Deed of Trust <u>and</u> any Note.

RESPONSE:


23.   Produce copies of front/back of any and all document(s) establishing the date of any appointment of Trustee Mortgage/Deed of Trust <u>and</u> any Note, including any and all assignments or transfers or nominees of any substitute trustee(s).

RESPONSE:

24.   Provide the Certificate Register.

RESPONSE:


25.   Produce copies of front/back of any and all document(s) establishing any Grantor for this Mortgage/Deed of Trust <u>and</u> any Note.

RESPONSE:


26.   Produce copies of front/back of any and all document(s) establishing any Grantee for this Mortgage/Deed of Trust <u>and</u> any Note.

RESPONSE:


27.   Produce copies of front/back of any and all documents establishing any Beneficiary for this Mortgage/Deed of Trust <u>and</u> any Note.

RESPONSE:

28.   Produce copies of front/back of any and all documentation evidencing the Mortgage/Deed of Trust is NOT a constructive trust or any other form of trust.

RESPONSE:


29.   Produce copies of front/back of all data, information, notations, text, figures and information contained in your mortgage servicing and accounting computer systems including, but not limited to Alltel or Fidelity CPI system, or any other similar mortgage servicing software used by you, any servicers, or sub-servicers of this mortgage account from the inception of this account to the date hereof.

RESPONSE:


30.   Produce copies of front/back of all descriptions and legends of all Codes used in your mortgage servicing and accounting system so the examiners and auditors and experts retained to audit and review this mortgage account may properly conduct their work.

RESPONSE:


31.   Produce copies of front/back of all assignments, transfers, allonges, or other documents evidencing a transfer, sale or assignment of this mortgage, deed of trust, monetary instrument or other document that secures payment by me to this obligation in this account from the inception of this account to the present date including any such assignment on the Mortgage Electronic Registration System (MERS).

RESPONSE:


32.   Produce copies of front/back of all records, electronic or otherwise, of assignments of this mortgage, monetary instrument or servicing rights to this mortgage including any such assignments on MERS.

RESPONSE:

24

33.   Produce copies of front/back of all deeds in lieu, modifications to this mortgage, monetary instrument or deed of trust from the inception of this account to the present date.

RESPONSE:

34.   Produce copies of front and back of each and every canceled check, draft or debit notice issued for payment of closing costs, fees and expenses, listed on any and all disclosure statements including, but not limited to, appraisal fees, inspection fees, title searches, title insurance fees, credit life insurance premiums, hazard insurance premiums, commissions, attorney fees, points, etc.

RESPONSE:

35.   Produce copies of front and back of all payment receipts, checks, money orders, drafts, automatic debits and written evidence of payments made by others or the debtor on this account.

RESPONSE:

36.   Produce copies of front and back of all letters, statements and documents sent to debtor by your company.

RESPONSE:

37.   Produce copies of front and back of all letters, statements and documents sent to the debtor by agents, attorneys or representatives of your company.

RESPONSE:

38.   Produce copies of front and back of all letters, statements and documents sent to the debtor by previous servicers, sub-servicers or others in your account file or in your control or possession or in the control or possession of any affiliate, parent company, agent, sub-servicers, servicers, attorney or other representative of your company.

RESPONSE:

 

39.   Produce copies of front and back of all letters, statements and documents contained in this account file or imaged by your company, any servicers of sub-servicers of this mortgage from the inception of this account to the present date.

RESPONSE:

 

40.   Produce copies of front and back of all electronic transfers, assignments and sales of the note/asset, mortgage, and deed of trust or other security instrument.

RESPONSE:

 

41.   Produce copies of front and back of all property inspection reports, appraisals, BPOs and reports done on debtor's property.

RESPONSE:

 

42.   Produce copies of front and back of all invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense which has been charged to the above-referenced mortgage account from the inception of this account to the present date.

RESPONSE:

 

43.   Produce copies of front and back of all checks used to pay invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense which has been charged to the above-referenced account from the inception of this account to the present date.

RESPONSE:

 

44.   Produce copies of front and back of all agreements, contracts and understandings with vendors that have been paid for any charge on this account from the inception of this account to this present date.

RESPONSE:


45.   Produce copies of front and back of all account servicing records, payment payoffs, payoff calculations, ARM audits, interest rate adjustments, payments records, transaction histories, account histories, accounting records, ledgers, and documents that relate to the accounting of the above-referenced account from the inception of the account to the present date.

RESPONSE:


46.   Produce copies of all account servicing transaction records, ledgers, registers and similar items detailing how the above-referenced account has been serviced from the inception of the account to the present date.

RESPONSE:


47.   Produce copies of any and all invoices and detailed billing statements from any law firm or attorney that has billed fees that have been assessed to collected from this account from the inception to the present date.

RESPONSE:


48.   Produce copies of all property inspections made on debtor's property in this mortgage account file.

RESPONSE:


49.   Produce copies of all BPO reports that have been performed on debtor's property.

RESPONSE:


50.   Please produce copies of all force-placed insurance policies that have been ordered on debtor's property from the inception of this account to the present date.

RESPONSE:


51.   Produce copies of all sales contracts, servicing agreements, assignments, allonges, transfers, indemnification agreements, recourse agreements and any agreement related to this account from the inception of this account to the present date.

RESPONSE:


52.   Provide copies of the front and bank of the canceled check, or any other evidence of payment for the purchase of this mortgage loan.

RESPONSE:

53.   Provide a complete life-of-loan Transaction history for this account showing all transactions through the date of your response.

RESPONSE:


54.   Provide a list of all transaction codes used in life-of-loan transaction history with plain-English definitions of each code.

RESPONSE:


55.   Provide Each and every other spreadsheet or other record of loan-level transactions or advances including but not limited to key Loan Transaction history, bankruptcy work form, or spreadsheet showing posting to and-or the status of loan-level accounts associated with this loan showing all transactions through the date of your response.

RESPONSE:


56.   To the extent not included in you other responses, screen shots showing the history through the date of your response of each account associated with this loan for principal, interest, escrow, late charges, legal fees, property inspections fees, broker price opinion fees, statutory expense fees, miscellaneous fees, and any other recoverable and non-recoverable corporate advance.

RESPONSE:

57.    All collection notes, collection records, communication files or any other form of recorded data with respect to any communication between Wells Fargo and the Borrower.

RESPONSE:

58.    All written or electronic communications between Wells Fargo and any non-lawyer third parties regarding this loan.

RESPONSE:

59.    An itemized statement of the full amount needed to reinstate and bring current this loan as of the date of your response.

RESPONSE:

60.    An Itemized pay-off statement for this loan as of the date of your response.

RESPONSE:

61.    Any assignment of this mortgage that has occurred since June 25, 2004.

RESPONSE:

62.    Please produce a document which sets forth a detailed **payment history** concerning the debt owed to you by the Debtor, for the period from the date of the origination of the loan to the date of this request.  Please make sure the payment history includes all of the following information:

A.    **Payoff Statement**, as of the date 30 days from the date of this request, including:

a.    The date on which the payoff statement was prepared;

b.      The current amount needed to pay off the loan in full, including the amount by type of each fee, charge or other sum included within the payoff statement;

c.      The information reasonably necessary to calculate the payoff amount as of the requested payoff date, including the per diem interest amount;

d.      The payment cutoff time, if any;

e.      The address or place where payment must be made;

f.      Any limitations as to the authorized method of payment;

g.      The amount of fees, if any, authorized under Federal or Kentucky law not otherwise included in this payoff statement; and

h.      The total amount you contend is necessary to fully reinstate this loan as of the date of your response to this discovery pleading.

B.      **Verification of debt**, as of the date of this request, including, without limitation:

a.      An itemization of the amount of the debt;

b.      The name of the consumer;

c.      A statement that the debt has not been paid; and

d.      A statement that the creditor to whom the debt was originally owed, in consideration of the consumer's debt, had either delivered a merchantable product or properly rendered a service.

***NOTE:*** *The information requested hereinabove in item "B" is pursuant to 15 U.S.C. § 1692g(b) and all collection activities, including litigation, must cease until it mails the verification to the Debtor's attorney.*

C.      **Payment History:**  A complete and itemized statement of the loan history from the date of the origination of the loan to the date of this request (commonly referred to as the "P309 Report"), including, but not limited to:

a.      **Charges and Debits:**  Each and every monetary amount by which you charged to or debited to any and all of Debtor's accounts with you, whether concerning principal, interest, late charges, appraisal fees, insurance, taxes, foreclosure fees, attorney fees, legal costs, property inspections, property preservation, NSF check charges, escrow, appraisal or otherwise, including:

i.      Requested information for all charges and debits:

(1)      The date of each and every charge or debit;
(2)      The amount of each and every charge or debit;
(3)      The resulting principal balance due and owing on the account;
(4)      The nature and purpose of each such charge or debit;

(5)     Identification of the provision under the Deed of Trust
and/or note that authorizes charging each and every such
fee against the loan of the Debtor;

(6)     The name, address and telephone number of the payee of
any type of disbursement related to this account; and

(7)     The actual amount paid to such payee.

ii.     Requested information for specific charges and debits:

(1)     Attorney Fees:  A summary of all fixed or standard legal
fees approved for any form of legal services rendered in
connection with this account.

(2)     Escrow Accounts:  A complete and itemized statement
from the date of the origination of the loan to the date of
this request of any escrow accounts and expenses related
thereto, related in any way to this loan, including:

(a)     Copies of any and all communications with the
Debtor regarding such accounts;

(b)     The dates of any escrow analysis performed; and

(c)     The results of any such escrow analysis.

(3)     Forced-Placed Insurance:  A complete and itemized
statement from the date of the origination of the loan to the
date of this request of any forced-placed insurance and
expenses related thereto, related in any way to this loan.

(4)     Loan Modification/Forbearance/Satisfaction Fees:  A
complete and itemized statement from the date of the
origination of the loan to the date of this request of any fees
incurred to modify, extend or amend the loan or to defer
any payment due under the terms of the loan or satisfaction
fees, including copies of all communications with the
Debtor.

(5)     Proof of Claim Fees:  A complete and itemized statement
of the amount, payment date, purpose and recipient of all
fees, whether actually charged or merely assessed, for the
preparation and filing of the original proof of claim, any
amended proofs of claim, or any supplemental proofs of
claim in this case.

(6)     Property Inspections:  Please attach copies of all property
inspection reports, appraisals and all photographs (digital or
otherwise).

(7)     Real Property Taxes:  A complete and itemized statement from the date of the origination of the loan to the date of this request of any real property taxes paid by you and the expenses related thereto, related in any way to this loan.

(8)     Suspense Accounts:  A complete and itemized statement from the date of the origination of the loan to the date of this request of any suspense account entries and/or any corporate advance entries related in any way to this loan, including, but not limited to, the balance in any such account or accounts and the nature, source and date of any and all funds deposited in such account or accounts.

(9)     Broker Price Opinions:  Please attach copies of all Broker Price Opinions (BPO) and photographs (digital or otherwise) of the subject property and of the comparable properties used by the appraiser.

b.    **Payments and Credits:**

i.    Each and every payment made by or on behalf of the Debtor to you from the date of the origination of the loan to the date of this request, including:

(1)    The date of each and every payment;
(2)    The amount of each and every payment;
(3)    The resulting principal balance due and owing on the account;
(4)    The manner of payment, whether by personal check, money order, cashier's check, bank check or otherwise; and
(5)    Any number or other information in your control that would further identify the payment, as for instance, and without limitation to the type of payment or type of information, check numbers, money order numbers, etc.

ii.    Each and every amount, other than payments made by or on behalf of the Debtor, by which you credited the Debtor's account, from the date of the origination of the loan to the date of this request, including:

(1)    The date of each and every payment;
(2)    The amount of each and every payment;
(3)    The resulting principal balance due and owing on the account; and
(4)    The nature and purpose of each such payment.

D.      **The Bankruptcy Worksheet:**  The bankruptcy worksheet in an XLS Format prepared in this case by any of your employees, agents, or third-party providers of bankruptcy services.

F.      **Key or Dictionary:**  A legend and/or detailed explanation of all transaction codes and other similar terms used in the statements requested above sufficient to allow for a layman's full understanding of all the data provided.

***NOTE:***  *The information requested hereinabove in items "C," "D," "E," & "F" are pursuant to the Federal Rules of Bankruptcy Procedure 9014 and Rules 34 and 26(b) F.R.Civ.P. and must be provided within 30 days.*

*This information is also requested pursuant to the Real Estate Settlement Procedures Act, codified as 12 U.S.C. § Section 2605(e) and Reg. X Section 3500.21(e)(1).  You must acknowledge receipt of this request within 20 business days and provide the requested information within 60 business days.*

RESPONSE:

Respectfully Submitted,

BRIAN T. CANUPP, PSC

_____

Brian T. Canupp
322 Main Street
Paris, Kentucky 40361
859-988-9658
Brian@Canupplaw.com

## CERTIFICATE OF SERVICE

**I, Brian T. Canupp**, attorney for the Debtor, hereby certifies to the Court as follows:

1.     I am not a party for the foregoing proceeding;
2.     I am not less than 18 years of age;
3.     I have this day served a copy of the foregoing **PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT** on all parties in interest by placing the same in an envelope, first-class mail, postage prepaid, (or by certified mail, return receipt, postage prepaid, as indicated below), addressed to each person at his dwelling house or usual place of abode or to the place where he regularly conducts his business or profession as follows:

**And via the Court's Electronic Case Filing System to:**

Hon. Ellen Arvin Kennedy
Dinsmore and Shohl, LLP
250 West Main Street, Suite 1400
Lexington, KY 40507

4.     To the best of my knowledge, information and belief, the parties in interest are not infants or incompetent persons;
5.     Service as outlined herein was made within the United States of America.

Dated this the ___11th___ day of ___June___, 2010.

_____

Brian T. Canupp
322 Main Street
Paris, Kentucky 40361
859-988-9658
Brian@Canupplaw.com