**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LEXINGTON DIVISION**

IN RE:

**KELLI JONES MATTOX**                                                              **CASE NO. 07-51925**

**PLAINTIFF**


**KELLI JONES MATTOX**                                                                       **PLAINTIFF**

**V.**                                                                          **ADV. CASE NO. 10-5041**

**WELLS FARGO, NA**                                                                       **DEFENDANT**


**MEMORANDUM OPINION**

The issue before the Court is whether the Plaintiff Debtor's state and federal law causes

of action can survive the Defendant Wells Fargo's Motion for Summary Judgment.  The Plaintiff

filed this adversary proceeding seeking actual and punitive damages pursuant to twelve counts:

(1) the charging of improper post-petition fees not approved by the bankruptcy court in violation

of 11 U.S.C. §105, 11 U.S.C. §506 and Federal Rule of Bankruptcy Procedure 2016 (Counts I

and II); (2) violation of the confirmation order pursuant to 11 U.S.C. §1327 (Count III); (3) willful

violation of the automatic stay pursuant to 11 U.S.C. §362(k) (Count IV); (4) violation of the

Kentucky Consumer Protection Act, or K.R.S. §367.220 ("KCPA") (Count V); (5) violation of the

Fair Debt Collection Practices Act, or 15 U.S.C. §1692f(1) ("FDCPA") (Count VI); (6) fraudulent

misrepresentation (Count VII); (7) breach of contract (Count VIII); (8) violation of the Real Estate

Settlement Procedures Act, or 12 U.S.C. §2605(e) ("RESPA") (Count IX); (9) violation of the

Truth in Lending Act, or 15 U.S.C. §1641 ("TILA") (Count X); (10) pattern and practice (Count

XI); and (11) intentional infliction of emotional distress (Count XII).  These counts are based on

Wells Fargo's (1) alleged misapplication of post-petition payments by the Plaintiff and the

1

Chapter 13 Trustee to "corporate advances"[1] ahead of principal and interest in contravention of the priority set forth in the Mortgage (Counts I-VIII); (2) Wells Fargo's failure to respond to the Plaintiff's second and third purported qualified written requests ("QWR") as defined in RESPA (Count IX); and (3) Wells Fargo's allegedly inadequate response to the Plaintiff's TILA request (Count XII).  Wells Fargo has moved for summary judgment on all counts.

For the reasons set forth below, the Court shall grant Wells Fargo's Motion for Summary Judgment on Counts I, II, III, V, VI, VII, VIII, IX, XI, and XII and deny Wells Fargo's Motion for Summary Judgment on Counts IV and X.

**Facts**

The following facts, except where stated otherwise, are undisputed.  The Plaintiff entered into a loan with nBank, N.A. ("nBank") on June 25, 2004, to purchase a home in Paris, Bourbon County, Kentucky (the "Real Property").  The Plaintiff executed a note (the "Note") in the amount of $92,547.00 in favor of nBank.  The Note was secured by a mortgage (the "Mortgage") granting nBank a security interest in the Real Property.

The Mortgage requires the borrower to pay when due "the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note."  The Mortgage also provides the Plaintiff's monthly mortgage payments are to be applied by the lender in the following order: (1) mortgage insurance premium payments; (2) taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required; (3) interest due under the Note; (4) amortization of the principal of the Note; and (5) late charges due under the Note.  If the borrower fails to make the principal and interest payments, fails to perform under any of the other covenants and agreements, or a legal proceeding is commenced that may significantly affect the lender's rights in the property, such

---

[1] "Corporate advances" appear to consist of a variety of charges by Wells Fargo, including attorney fees, broker fees, property inspection fees, and the like.

as bankruptcy, the Mortgage allows the lender to "do and pay whatever is necessary to protect the value of the property and the Lender's rights in the property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2." The Mortgage states such amounts shall bear interest from the date of disbursement and "at the option of Lender, shall be immediately due and payable."

According to the Mortgage, "in the case of payment defaults, [Lender may] require immediate payment in full of all sums secured by [the Mortgage] if…Borrower defaults by failing to pay in full any monthly payment required by [the Mortgage] prior to or on the due date of the next monthly payment…" Finally, the Mortgage provides in the event of foreclosure, the lender will be entitled to collect all expenses including reasonable attorneys' fees and costs of title evidence incurred in pursuing the foreclosure.

Pursuant to the Note, the Plaintiff's first payment of principal and interest was due to nBank on August 1, 2004. On July 6, 2004, before the Plaintiff's first payment became due, nBank sent the Plaintiff a notice stating "your loan has been sold to Wells Fargo Bank, N.A. and will be serviced by Wells Fargo Bank, N.A." The notice also directed the Plaintiff to send all payments to Wells Fargo.

The Plaintiff did not make all of the payments required under the Mortgage and Note. On October 17, 2006, Wells Fargo initiated foreclosure proceedings in the Bourbon Circuit Court. In conjunction with the foreclosure proceedings, Wells Fargo filed an affidavit executed by its Vice President of Loan Documentation, China Brown, representing that Wells Fargo "is the holder of the subject debt and the mortgage securing the same." On November 8, 2006, an assignment dated October 30, 2006 (the "Assignment") was recorded in the Bourbon County Clerk's office assigning the Mortgage and Note to Wells Fargo. No other assignments have since been recorded.

3

On October 3, 2007, the Plaintiff filed a voluntary Chapter 13 bankruptcy in an attempt to avoid foreclosure and listed Wells Fargo as a secured creditor on Schedule D of her petition. Wells Fargo filed a proof of claim [POC #3-1] in October of 2007 alleging a secured debt of $97,384.20, plus a total arrearage of $17,378.61, including past due payments of $11,592.60, as well as foreclosure attorneys' fees and costs, post-petition bankruptcy attorneys' fees, accrued late charges, escrow shortage, property preservation, property inspection, and NSF charges.[2]

The Plaintiff ultimately filed a Chapter 13 plan whereby the Plaintiff proposed making payments inside the plan to cure the pre-petition arrearage while continuing to pay her regular monthly mortgage payments to Wells Fargo outside the plan. The Plaintiff proposed a plan payment of $352.56 per month to go towards the pre-petition arrearage. The plan was confirmed on February 15, 2008.

On May 22, 2008, Wells Fargo filed a Motion for Relief from Stay alleging that the Plaintiff failed to pay her post-petition mortgage payments. The Plaintiff objected and the parties resolved the dispute by entry of an Agreed Order on September 4, 2008. Pursuant to that Order, the parties agreed as follows: (1) the Plaintiff would make a payment of $395.58 on September 15, 2008, and then five payments of $395.54 each month thereafter through February 15, 2009, to cure the post-petition mortgage arrearage of $2,373.28[3]; (2) the Plaintiff would continue to make her regular plan payments to the Chapter 13 Trustee to cure the pre-petition arrearage; and (3) the Plaintiff would resume her regular monthly mortgage payments beginning in September of 2008 and make all future monthly payments "in a timely fashion." The Agreed Order further provided "[i]n the event that the said debtor should fail to pay any of

---

[2] On December 15, 2008, the Chapter 13 Trustee filed a Notice of allowance of claims, including Wells Fargo's Proof of Claim #3-1. Wells Fargo later amended its proof of claim on April 20, 2009, to claim a total arrearage of $16,878.61, reflecting a deduction from the original amount of $500 held in suspense.

[3] This arrearage amount includes three post-petition payments at $775.48 each, accrued late charges at $151.20, and $650 in attorney fees and costs, less $754.63 in the Plaintiff's suspense account.

the lump sum payments hereinabove described on or before her specified due dates, or should

fail to pay any future monthly payments so that the mortgage payment is not received within 15

days of its due date, then, or in any one of those events," the automatic stay would be

terminated in all respects upon the filing of a notice of default with service on the Plaintiff, the

Plaintiff's counsel and the Chapter 13 Trustee, and "without further order from this Court and by

agreement of the parties hereto."  The Agreed Order stated the "only ground for objection to

such an Order shall be that payments were timely made."

On January 7, 2009, the Plaintiff's counsel sent a letter purporting to be a "qualified

written request" ("QWR") as defined in RESPA, seeking thirty-seven categories of information

about the Plaintiff's Mortgage and Note.  Wells Fargo responded on April 2, 2009, by providing

details about the Plaintiff's Mortgage and Note in the body of the letter and also attaching a copy

of a Customer Account Activity Statement, which depicted the activity on the Plaintiff's account

up to the time of the letter.  Wells Fargo indicated in the letter that anything not produced had

been withheld as either privileged or proprietary information and further indicated some of the

information requested was outside the scope of a QWR, such as "information requested related

to the Pooling Service Agreement (PSA) with the Note holder and/or investor" but that additional

information was publicly available.  Finally, Wells Fargo provided contact information for its

foreclosure attorneys and for Wells Fargo itself, and represented that it was the "current holder

of the mortgage for this loan" and servicer of the loan as of July 13, 2006.

On February 19, 2009, the Plaintiff's counsel received a letter from Wells Fargo stating

the Plaintiff had defaulted under the terms of the Agreed Order.  The letter stated that a post-

petition mortgage payment due February 1, 2009, in the amount of $775.49 and an additional

"stipulated payment" of $70.97, for a total of $846.35, were past due.  The letter gave the

Plaintiff ten days to cure the default or a Notice of Default would be filed.  The Plaintiff disagrees

she was in default at the time the letter was issued and argues that the payment was timely made but erroneously placed in a "suspense account" held by Wells Fargo.

On March 4, 2009, Wells Fargo filed a Notice of Default.  On March 7, 2009, the Plaintiff sent a payment in the amount of $780.00 to Wells Fargo for her March payment.  On March 13, 2009, Wells Fargo returned her payment because it did not represent the total amount due on the Plaintiff's account.

Another letter notifying the Plaintiff of a default was sent to the Plaintiff's counsel on May 27, 2009.  This letter indicated the Plaintiff had defaulted on the Agreed Order for failure to pay her monthly mortgage payment for March, April and May of 2009 for a total of $2,326.44, as well as $846.26 in stipulated payments still due.  This amount, less a suspense balance of $70.87, resulted in a total "agreed order default" of $3,101.83.  A second Notice of Default was filed in the record on June 16, 2009.

The Plaintiff's counsel then sent a second purported QWR letter on September 8, 2009, and a purported third QWR letter on November 23, 2009.  These two letters are substantially identical to the first purported QWR sent in January of 2009 except for an additional request for "all P-309 screen shots of the history of all of the accounts…associated with this loan" included in the second and third letters.  Wells Fargo didn't respond to the latter two letters.  It takes the position that a complete response was provided in its April 2, 2009 response.

On March 25, 2010, Plaintiff's counsel sent Wells Fargo a request for the name, address, and telephone number for the owner of the Note pursuant to TILA.  Wells Fargo responded to the letter on April 19, 2010.  In its response, Wells Fargo stated the Note is owned by "a group of investors" and that Wells Fargo is not a member of that group, but merely a servicer of the loan.[4]

---

[4] Wells Fargo has since represented in discovery that (1) Bank of America, N.A. (formerly Countrywide Home Loans, Inc.) holds the payment rights under the Mortgage; (2) the Note is owned by a Fannie Mae

Based on these facts, the Plaintiff filed this adversary proceeding on April 28, 2010, alleging a myriad of state and federal causes of action and seeking actual and punitive damages.  Wells Fargo has moved for summary judgment on all counts.

## Analysis

Both the Plaintiff's Complaint and Wells Fargo's Motion for Summary Judgment are crafted to force the Court to take a "tree by tree" (Count by Count) analysis.  The problem with this approach is that it easily results in missing "the forest;" that is, the simple inquiry of whether timely payments were made by the Plaintiff which were properly applied by Wells Fargo.  There is no dispute that Plaintiff had three obligations to timely pay:

(1)     The monthly "arrearage" payment to the Trustee in the amount of $352.56;

(2)     The monthly installments commencing with the September,  2008 payment and other charges incurred after that date directly to Wells Fargo pursuant to the terms of the Note; and

(3)     Six monthly payments, $395.58 on September 15, 2008 and five monthly payments thereafter of $395.58 each, directly to Wells Fargo.

But whether the Debtor made these payments on time and whether Wells Fargo properly applied these payments are issues still in dispute.

Despite these genuine issues of material fact, summary judgment is appropriate on some of the Plaintiff's counts.   While the Court may not resolve the ultimate issues of timely payment and proper application of payment at the summary judgment stage, Wells Fargo is entitled to summary judgment on several of the Plaintiff's causes of action on the basis that these causes of action, for the reasons explained more fully below, are not the appropriate

---

security; and (3) BAC Home Loan Servicing, LP is the master servicer and trustee of the loan.  The Note provided in discovery is indorsed specifically to Wells Fargo.

vehicles for obtaining the relief the Plaintiff seeks.  Against this background, the Court shall

address the parties' arguments related to each count.

**A.     Counts I and II – Violations of 11 U.S.C. §§105 and 506 and Bankruptcy Rule 2016**

The Plaintiff alleges Wells Fargo violated 11 U.S.C. §105 and §506(b), as well as Rule

2016, by charging improper and unauthorized post-petition legal fees and expenses without

prior notice or court approval.  Subsection (b) of §506 allows interest on a claim and any

"reasonable fees, costs or charges provided for under the agreement or State statute under

which such claim arose" to the extent that "an allowed secured claim is secured by property the

value of which, after any recovery under subsection (c) of this section, is greater than the

amount of such claim."  11 U.S.C. §506(b).  Rule 2016 requires any entity seeking

compensation from the estate for services or reimbursement of necessary expenses to file an

application with the Court for the requested fees or expenses.  The Plaintiff argues that the

Court may award damages for a violation under §506(b) and Rule 2016 pursuant to its powers

enumerated under §105(a), which allows the Court to "issue any order, process, or judgment

that is necessary or appropriate to carry out the provisions of title."  11 U.S.C. §105(a).

Wells Fargo has moved for summary judgment on Counts I and II, arguing there is no

private cause of action for a violation of this provision of the Code or this Bankruptcy Rule.

*Pertuso v. Ford Motor Credit Co*, 233 F.3d 417 (6th Cir. 2000) (holding there is no private cause

of action for a violation of the discharge injunction).  The Plaintiff concedes there is no private

right of action but argues that the Court may remedy this alleged grievance by holding the

creditor in contempt in an adversary proceeding.

There are no remedies in the text of §506(b) or Rule 2016 for a violation of either

provision.  Whether Wells Fargo has "violated" 506(b) or Rule 2016, or whether Rule 2016

applies to a creditor's claim for attorneys' fees and costs pursuant to a note and mortgage, need

8

not be addressed.  Even assuming such "violations" and the applicability of these provisions,

there is no private cause of action for the violation of either of these provisions.

The Sixth Circuit has made it clear that §105 cannot be used to create a remedy for a

violation of a provision of the Bankruptcy Code where Congress did not explicitly create one.

*See Pertuso*, 233 F.3d at 423 ("[W]e do not read §105 as conferring on courts such broad

remedial powers.  The 'provisions of this title' simply denote a set of remedies fixed by

Congress.  A court cannot legislate to add to them.").  Thus, there is no private cause of action

for a violation of §506(b) or Rule 2016 pursuant to §105. *See Joubert v. ABN AMRO Mortgage*

*Group, Inc. (In re Joubert)*, 411 F.3d 452, 456 (3d Cir. 2005) (relying on *Pertuso* and other

similar cases in holding that there is no private cause of action under §105(a) and §506(b));

*Yancey v. Citifinancial, Inc. (In re Yancey),* 301 B.R. 861, 863 (Bankr. W.D. Tenn. 2003) (relying

on *Pertuso* and holding there is no private right of action pursuant to §105(a) and Bankruptcy

Rule 2016).  Further, the Plaintiff cannot seek contempt for any alleged violation of these

provisions in an adversary proceeding.  *See Frambes v. Nuvell National Auto Finance, LLC (In*

*re Frambes)*, 2011 WL 2133538, *4 (Bankr. E.D. Ky. May 25, 2011).

For this reason, Wells Fargo's Motion for Summary Judgment on Counts I and II shall be

granted.

**B.      Count III – Violation of the Confirmation Order Pursuant to 11 USC §1327**

The Plaintiff alleges in Count III that Wells Fargo violated the confirmation order by

misapplying her payments and payments made by the Chapter 13 Trustee to "corporate

advances" before principal and interest in contravention of the terms of the Mortgage.  The

Plaintiff relies on §1327, which sets forth the effect of confirmation and states that the confirmed

plan "binds the debtor and each creditor, whether or not the claim of such creditor is provided

for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected

the plan."  11 U.S.C. §1327.

9

Wells Fargo has moved for summary judgment on the ground that there is no private

cause of action for violation of a confirmation order.  *See Kerney v. Capital One Fin. Corp. (In re*

*Sims),* 278 B.R. 457, 472-73 (E.D. Tenn. 2002) (holding there is no private cause of action for

violations of §1327).  Again, the Plaintiff concedes this fact and argues that the court still has

power pursuant to §105 to hold Wells Fargo in contempt in an adversary proceeding.

Based on the law as set forth by the Sixth Circuit in *Pertuso, supra,* and followed by this

Court in *Frambes, supra*, the Plaintiff's argument is unpersuasive.  For this reason, Wells

Fargo's Motion for Summary Judgment on Count III shall be granted as there is no private

cause of action for a violation of the confirmation order pursuant to §1327.

**C.     Count IV – Willful Violation of the Automatic Stay**

The Plaintiff alleges Wells Fargo willfully violated the automatic stay pursuant to 11

U.S.C. §362(k) by misapplying her monthly payments and payments of the Chapter 13 Trustee.

According to the Plaintiff, such payments remain property of the estate and Wells Fargo's

application of these payments contrary to the terms of the Mortgage is an act to obtain

possession of property of the estate or to exercise control over property of the estate in violation

of the stay.  *See* 11 U.S.C. §362(a)(3).

Wells Fargo moves for summary judgment on the grounds that it did not violate the

automatic stay because it took no action to obtain possession of property of the estate or

exercise control over property of the estate even if it did arguably misapply the Plaintiff's

monthly payments.  Wells Fargo's position is that it only accepted payments that the Court had

already ordered the Plaintiff to pay and an alleged bookkeeping error is not a stay violation.

*See In re Sims,* 278 B.R. at 471-472 ("Mere internal bookkeeping entries by a creditor, in and of

themselves, do not generally produce any effect on a debtor, much less a change or an

attempted change in possession of property of the estate…[any creditor] could produce all kinds

of paperwork which if communicated to the debtor or a third party would violate the stay, but

10

absent that communication, some overt act, or resulting effect on the debtor, no violation has occurred.") ; *see also Mann v. Chase Manhattan Mortgage Corp.*, 316 F.3d 1, 4 (1st Cir. 2003) (holding post-petition bookkeeping entries do not implicate the automatic stay).

Section 1306 defines property of the estate in a Chapter 13 bankruptcy.  Pursuant to §1306, in addition to property specified in §541, "property of the estate" includes "all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12, of this title…".  11 U.S.C. §1306(a).  Post-confirmation earnings are part of the Chapter 13 estate as well and therefore fully protected by the automatic stay.  *Id; see also In re Kolenda*, 212 B.R. 851, 853 (W.D. Mich. 1997).

Wells Fargo does not, and cannot, argue that the Plaintiff's post-petition income used to pay her Mortgage payments, and pre-petition and post-petition arrearage payments, is not property of the Chapter 13 estate.  Wells Fargo argues instead that upon payment, this characterization no longer applies.  This Court disagrees.  Section 1306 does not provide for such a limitation.  A creditor's "misapplication" of payments may be viewed as a creditor exercising improper control over property of the estate.  The confirmed Plan, binding upon Wells Fargo pursuant to 11 U.S.C. §1327, specified the extent to which Wells Fargo could properly exercise control over payments made by the Debtor and acts in contravention of that Plan may rise to the level of a willful violation of the stay.

Other courts have likewise held that a creditor may violate the automatic stay by misapplying payments, and in particular misapplying payments received from the Chapter 13 Trustee under the Plaintiff's plan, pursuant to §362(a)(3) ("any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate"); §362(a)(4) ("any act to create, perfect, or enforce any lien against property of the estate"); §362(a)(5) ("any act to create, perfect, or enforce against property of the debtor any

11

lien to the extent that such lien secures a claim that arose before the commencement of the

case…"); and §362(a)(6) ("any act to collect, assess, or recover a claim against the debtor that

arose before the commencement of the case.").  *See generally Galloway v. EMC Mort. Corp. (In*

*re Galloway)*, 2010 WL 364336, *5 (Bankr. N.D. Miss. 2010) (*citing Myles v. Wells Fargo Bank,*

*N.A. (In re Myles)*, 395 B.R. 599, 606 (M.D. La. 2008)); *Jones v. Wells Fargo Home Mortgage*

(*In re Jones)*, 366 B.R. 584, 599 (Bankr. E.D. La. 2007); *Sanchez v. Ameriquest Mortgage*

*Company* (*In re Sanchez)*, 372 B.R. 289, 313 (Bankr. S.D. Tex. 2007); *McCormack v. Federal*

*Home Loan Mortgage Corp.* (*In re McCormack)*, 203 B.R. 521, 525-526 (Bankr. D.N.H. 1996);

*Payne v. Mortgage Electronic Registration Systems, Inc.* (*In re Payne)*, 387 B.R. 614, 638-639

(Bankr. D. Kan. 2008).

Furthermore, the case law cited by Wells Fargo in support of its argument is

distinguishable from the facts herein.  In both *In re Sims, supra*, and *Mann, supra*, the court

focused on the lack of any "overt act" by the creditor such as an attempt to collect on fees

improperly applied.  Contrary to Wells Fargo's assertions, Wells Fargo didn't just make

bookkeeping entries, but attempted to collect on its debt by demanding payment through two

letters, and then filing a notice of default for the purpose of lifting the automatic stay.

The Court's conclusion that a misapplication of payments can constitute an actionable

stay violation is further buttressed by 11 U.S.C. §524(i), which provides:

> The willful failure of a creditor to credit payments received under a
> plan confirmed under this title, unless the order confirming the
> plan is revoked, the plan is in default, or the creditor has not
> received payments required to be made under the plan in the
> manner required by the plan (including crediting the amounts
> required under the plan), shall constitute a violation of an
> injunction under subsection (a)(2) if the act of the creditor to
> collect and failure to credit payments in the manner required by
> the plan caused material injury to the debtor.

11 U.S.C. §524(i).  Accordingly, the Bankruptcy Code provides a clear remedy for

misapplication once a discharge injunction is entered.  This provision "makes clear that a failure

to properly credit plan payments that results in a post-discharge assertion that the debtor is in default is not simply a matter for state courts to resolve, but rather a critical issue that must be resolved by the bankruptcy court to ensure that the provisions and purposes of the plan are effectuated."  4 COLLIER ON BANKRUPTCY ¶ 524.08 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2011).  This Court cannot believe that Congress intended to provide debtors a remedy post-discharge while leaving debtors vulnerable in a post-confirmation, pre-discharge "purgatory" period.  The remedy for this post-confirmation, pre-discharge period, quite simply, is found under §362(k).[5]

The Plaintiff alleges that Wells Fargo is misapplying not only payments made directly by the Plaintiff to Wells Fargo, but also payments made to the Chapter 13 Trustee and then paid from the Trustee to Wells Fargo.  The Plaintiff has submitted expert testimony in opposition to Wells Fargo's Motion for Summary Judgment supporting its contention that Wells Fargo misapplied these payments.  Thus, there being a genuine issue of material fact regarding the misapplication of payments by the Plaintiff and the Chapter 13 Trustee made to Wells Fargo, Wells Fargo's Motion for Summary Judgment as to Count IV shall be denied.

**D.      Count V – Violation of the Kentucky Consumer Protection Act ("KCPA")**

The Plaintiff seeks actual and punitive damages for violation of the KCPA based on Wells Fargo's alleged misapplication of payments to the Plaintiff's loan.  Wells Fargo argues that summary judgment is appropriate because the KCPA does not apply to mortgage transactions.

K.R.S. §367.220 applies to:

---

[5] New Federal Rule of Bankruptcy Procedure 3002.1 will become effective December 1, 2011.  The new Rule addresses the very issues that drive this adversary proceeding – the application of post-petition fees, expenses and charges.  New Rule 3002.1 assists in the implementation of §1322(b)(5), which permits a Chapter 13 debtor to cure a default and maintain payments of a home mortgage over the course of the debtor's plan, by requiring various notices including notices of payment changes, post-petition fees, expenses, charges, and final cure of payments.  The new Rule sets forth the procedure for such notices as well as consequences for failure to provide the required notices.

> [a]ny person who purchases or leases goods or services primarily
> for personal, family or household purposes and thereby suffers
> any ascertainable loss of money or property, real or personal, as a
> result of the use or employment of another person of a method,
> act or practice declared unlawful by K.R.S. 367.170…

K.R.S. §367.220.  "Unlawful acts" under the KCPA are defined as "unfair, false, misleading, or

deceptive acts or practices in the conduct of any trade or commerce."  K.R.S. §367.170.

The Plaintiff concedes that under Kentucky law, the KCPA does not apply to real estate

transactions by an individual homeowner.  *See Craig v. Keene,* 32 S.W.3d 90, 90-91 (Ky. App.

2000)*; GMAC Mortg., LLC v. McKeever,* 2010 U.S. Dist. LEXIS 91118, at *19 (E.D. Ky. August

31, 2010); *Todd v. Ky. Heartland Mortgage, Inc.*, 2003 WL 21770805, at *3 (Ky. App. August 1,

2003).  The Plaintiff's attempts to distinguish these cases on the basis that neither case

addresses a situation involving a securitized loan involving multiple transfers of interest or a

transfer of a note and assignment of a mortgage are unpersuasive.  Wells Fargo's Motion for

Summary Judgment on Count V shall be granted.

**E.      Count VI – Violation of the Fair Debt Collection Practices Act ("FDCPA")**

The Plaintiff also alleges Wells Fargo violated the FDCPA by misapplying her payments.

Wells Fargo argues it is not subject to the FDCPA because it is a servicer of the loan and not an

owner, thus it is not a "debt collector" as defined under the statute.

The FDCPA defines "debt collector" as "any person who uses any instrumentality of

interstate commerce or the mails in any business the principal purpose of which is the collection

of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or

due or asserted to be owed or due another."  15 U.S.C. §1692a(6).  "[N]otwithstanding the

exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any

creditor who, in the process of collecting his own debts, uses any name other than his own

which would indicate that a third person is collecting or attempting to collect his own debts."  *Id.*

Under subsection (F), the term "debt collector" does not include "any person collecting or

14

attempting to collect any debt owed or due or asserted to be owed or due another to the extent

such activity…(iii) concerns a debt which was not in default at the time it was obtained by such

person."  15 U.S.C. §1692a(6)(F)(iii).  In other words, a "debt collector" does not include "those

who had responsibility for collecting the debt prior to the time it went into default."  *Alexander v.

Omega Management, Inc.*, 67 F. Supp.2d 1052, 1055 (D. Minn. 1999).  *See also Perry v.

Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) ("The legislative history of section

1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors,

a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default

at the time it was assigned.").

The parties do not dispute that Wells Fargo began servicing the debt prior to default.  A

mortgage loan servicer does not qualify as a "debt collector" unless the mortgage loan servicer

acquires the loan when it is in default or treats the loan as if it was in default when it acquired it.

*See Shugart v. Ocwen Loan Servicing, LLC*, 747 F. Supp. 2d 938, 942-943 (S.D. Ohio 2010).

Thus, the FDCPA does not apply to Wells Fargo and Wells Fargo's Motion for Summary

Judgment on Count VI shall be dismissed.

**F.    Count VII – Fraudulent Misrepresentation**

The Plaintiff alleges that Wells Fargo fraudulently induced her to enter into the Mortgage

by making material misrepresentations about the application of her mortgage payments.  Wells

Fargo argues that the Plaintiff's claim of fraud and tortuous misrepresentation are nothing more

than a "dress up" of her breach of contract claims.

Under Kentucky law, fraud must "relate to a present or pre-existing fact and cannot

ordinarily be predicated on representations of statements that are mere matters of futurity or

things to be done or performed in the future."  *See Brooks v. Williams*, 268 S.W.2d 650, 652

(Ky. 1954).  The alleged misrepresentation about the application of the Plaintiff's Mortgage

payments is a provision in the contract regarding the lender's future performance; it is not a

15

representation about a present fact.  To the extent that the Plaintiff complains that Wells Fargo

failed to perform as required under the contract, she cannot proceed under a fraudulent

misrepresentation claim.  *Id.* (holding a person who contracts to perform an act in the future and

fails to do so has breached the contract rather than committed a fraudulent or deceitful act).

Thus, Wells Fargo's Motion for Summary Judgment shall be granted as to Count VII.

**G.     Count VIII – Breach of Contract**

The Plaintiff alleges Wells Fargo breached its Mortgage contract in the application of

payments towards "corporate advances" in contravention of the Mortgage.  Wells Fargo argues

that the Plaintiff cannot claim breach of contract where she breached the contract first.  *See*

*Dalton v. Mullins*, 293 S.W.2d 470, 476 (Ky. 1956) ("[H]e who first breaches a contract must

bear the liability for its nonperformance, thus no benefits should be obtained by the party who is

guilty of the first breach.").

The parties focus on who defaulted first misses the mark.  The Sixth Circuit has held that

where a state law cause of action presupposes a violation of the Bankruptcy Code, it is

preempted.  *See Pertuso*, 233 F.3d at 425 ("Permitting assertion of a host of state law causes of

action to redress wrongs under the Bankruptcy Code would undermine the uniformity the Code

endeavors to preserve and would 'stand[ ] as an obstacle to the accomplishment and execution

of the full purposes and objectives of Congress.'") (citations omitted).  The Plaintiff's filing of the

Chapter 13 plan, and its confirmation by this Court, created a new contract between the parties.

*See, e.g., Newcomer v. Litton Loan Servicing, LP (In re Newcomer)*, 438 B.R. 527, 543 (Bankr.

D. Md. 2010) ("A chapter 13 plan is a 'new and binding contract, sanctioned by the court,

between debtors and their pre-confirmation creditors.'").  If Wells Fargo breached the new

contract between the parties by breaching the terms of the Plan or the Mortgage, such conduct

may be remedied pre-discharge within the Bankruptcy Code under §362(k).  Thus, the Plaintiff

may not assert a breach of contract cause of action because Congress has preempted the field.

*See Pertuso*, 233 F.3d at 426.[6]

For this reason, Wells Motion for Summary Judgment on Count VIII shall be granted.

**H.     Count IX – Violation of the Real Estate Settlement Procedures Act ("RESPA")**

The Plaintiff claims that Wells Fargo violated RESPA by failing to respond to QWRs sent

by her counsel on September 8, 2009, and November 23, 2009, as required by 12 U.S.C.

§2605(e).  Section 2605(e) requires a servicer of a federally regulated mortgage loan to respond

to a QWR within sixty days of receipt.  12 U.S.C. §2605(e).  The servicer is permitted to respond

to the request by providing (1) the "information requested by the borrower or an explanation of

why the information requested is unavailable or cannot be obtained by the servicer;" and (2) "the

name and telephone number of an individual employed by, or the office or department of, the

servicer who can provide assistance to the borrower."  12 U.S.C. §2605(e)(2)(C).

Wells Fargo argues that the Plaintiff's claim pursuant to RESPA fails as a matter of law

because she has produced no evidence of any actual damages suffered.  *See Mekani v.

Homecomings Fin., LLC*, 752 F. Supp 2d 786, 795-96 (E.D. Mich. 2010) (collecting cases and

dismissing claim where plaintiff failed to allege link between damages suffered and responses to

QWRs).  Wells Fargo's argument is well taken.

In response to Wells Fargo's Motion for Summary Judgment, the Plaintiff merely argues

she has suffered damages in the form of time and attorneys' fees "trying to appropriately cure

any actual default on the loan."  The Plaintiff's argument is unpersuasive because the Plaintiff

has presented no evidence of damages she has suffered directly related to the alleged failure to

respond to the QWRs and independent of her other claims.  *See Collier v. Wells Fargo Home*

---

[6] The Plaintiff's Counts V (Kentucky Consumer Protection Act), VII (fraudulent misrepresentation), and XII (intentional infliction of emotional distress) may also be preempted pursuant to the Sixth Circuit's holding in *Pertuso*, but because this Court dismisses these counts on other grounds, it does not need to address these issues.

*Mortgage*, 2006 WL 1464170, *3 (N.D. Tex. May 26, 2006) (on summary judgment, finding that

plaintiffs had failed to allege damages specifically relating to the time period after plaintiffs sent

their QWRs, as distinct from damages flowing from the alleged improper servicing of their

mortgage which had already occurred*); see also Webb v. Chase Manhattan Mortg. Corp.*, 2008

WL 2230696, *14 (S. D. Ohio May 28, 2008) (same).  The Plaintiff has not identified any actual

damages suffered as a result of Wells Fargo's alleged RESPA violation in her Complaint, in

discovery, or in response to Wells Fargo's Motion for Summary Judgment.  Mere allegations of

damages suffered, without appropriate evidence to support the allegations, is insufficient to

defeat summary judgment.  Fed. R. Bank. P. 7056(c).

The Plaintiff does not dispute that she received a response to the first QWR.  The only

apparent difference in the latter two requests appears to be a request for a screen shot and the

Plaintiff has presented no evidence to support how she has been damaged by her failure to

receive a response to the request for the screen shot.  Wells Fargo's Motion for Summary

Judgment on Count IX shall be granted.

## I.      Count X – Violation of the Truth in Lending Act ("TILA")

The Plaintiff alleges Wells Fargo violated the TILA, or 15 U.S.C. §1641.  According to

subsection (f) of §1641, "upon written request by the obligor, the servicer shall provide the

obligor, to the best knowledge of the servicer, with the name, address, and telephone number of

the owner of the obligation or the master servicer of the obligation."  15 U.S.C. §1641(f).  The

Plaintiff argues that Wells Fargo's response stating the loan is owned by "a group of investors"

is a violation for which she is entitled to recover actual and statutory damages pursuant to 15

U.S.C. §1640(a).

Wells Fargo argues that TILA does not apply because it is not a "creditor" as defined by

TILA.  TILA defines a "creditor" as one who (1) "regularly extends, whether in connection with

loans, sales of property or services, or otherwise, consumer credit which is payable by

18

agreement in more than four installments or for which the payment of a finance charge is or may

be required" and (2) "is the person to whom the debt arising from the consumer credit

transaction is initially payable on the face of the evidence of indebtedness or, if there is no such

evidence of indebtedness, by agreement."  15 U.S.C. §1602(f).   Wells Fargo believes it is not a

creditor because it was not part of the origination of the loan.  *See GMAC Mortgage, LLC v.*

*McKeever*, 2010 WL 2639828, *2-3 (E.D. Ky. June 29, 2010) (dismissing a TILA claim against

MERS because it was not involved in the origination of the loan).  There is no dispute that Wells

Fargo did not originate the loan; rather, the original loan was provided by nBank.

But an "assignee" may be held liable for a creditor's TILA disclosure violations where the

violation is "apparent on the face of the disclosure statement," including (1) an incomplete or

inaccurate disclosure/document or (2) a disclosure that fails to use required terms.  *See* 15

U.S.C. §1641(a).  A mortgage servicer cannot be liable under TILA as an assignee unless it

also owns the debt at issue.  *See* 15 U.S.C. §1641(f)(1) and (2); *Longo v. First National*

*Mortgage Sources*, 2010 WL 415330, *4 (D.N.J. Jan. 29, 2010) (dismissing TILA claim against

mortgage servicer where there was no evidence that it owned the loan); *Harris v. Option One*

*Mortgage Corp.*, 261 F.R.D. 98, 105 (D.S.C. 2009) (same).

Wells Fargo maintains that it is a servicer of the Plaintiff's loan and is not an owner.  But

it is apparent from the record that there is evidence contrary to this assertion, such as the

Assignment and specific endorsement to Wells Fargo on the Note.  There being a genuine issue

of material fact as to the ownership of the Plaintiff's Note and Mortgage, Wells Fargo's Motion

for Summary Judgment on Count X shall be denied.

**J.      Count XI – "Pattern and Practice"**

The Plaintiff alleges that Wells Fargo should be held liable under a "pattern and practice"

theory on the grounds that it has "engaged in a pattern and practice of tracking and charging

undisclosed and improper fees during Chapter 13 cases."  Wells Fargo argues that "pattern and

practice" is not a cause of action under Kentucky law.  The Plaintiff concedes there is no

separate action for "pattern and practice" but counters that evidence of improper payment

collection and application in Chapter 13 bankruptcies is relevant to show reckless indifference

for the purpose of determining whether punitive damages are appropriate.

There is no separate cause of action for "pattern and practice" in Kentucky.  Thus, Count

XI of the Plaintiff's Complaint shall be dismissed.[7]

### K.    Count XII – Intentional Infliction of Emotional Distress

The Plaintiff seeks to recover for intentional infliction of emotional distress ("IIED").  To

state a cause of action for IIED, the Plaintiff must prove (1) the defendant's conduct is

intentional or reckless; (2) the conduct is outrageous and intolerable in that it offends against the

generally accepted standards of decency and morality; (3) there is a causal connection between

the wrongdoer's conduct and the emotional distress; and (4) the emotional distress is severe.

*See Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 788 (Ky. 2004).  "Liability has been

found only where the conduct has been so outrageous in character, and so extreme in degree,

as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly

intolerable in a civilized community."  *Id.* at 789.

Wells Fargo argues the Plaintiff's cause of action for IIED should be dismissed because

the alleged conduct of charging improper fees and attempting to foreclose on property does not

rise to the level of outrageous conduct.  Wells Fargo cites *Heavrin v. Boeing Capital Corp.*, 246

F. Supp. 2d 728 (W.D. Ky. 2003) in support.  In *Heavrin*, the court held that the filing of a false

proof of claim, though "potentially criminal," did not rise to the level of outrageous conduct.  *Id.*

---

[7] The dismissal of Count XI is not a determination of the admissibility of this evidence.  Wells Fargo has filed a separate objection to the admissibility of this evidence [Doc. 56] to which the Plaintiff has responded [Doc. 58].  The Court shall address the relevancy of this evidence to the Plaintiff's remaining counts and its admissibility at trial.

at 733.  Wells Fargo argues that where the potentially criminal filing of a proof of claim is not

outrageous, the alleged misapplication of fees cannot be either.

This Court agrees.  IIED is not a tort for "petty insults, unkind words, and minor

indignities;" nor is it a tort that compensates for behavior that is "cold, callous and lacking

sensitivity."  *See Osborne v. Payne*, 31 S.W.3d 911, 913 (Ky. 2000).  Assuming the Plaintiff's

allegations are true, Wells Fargo's alleged behavior does not rise to the level of outrageous

conduct under Kentucky law.  This misapplication of approximately $1600 in funds, and the

decision to declare the Plaintiff in default for failure to pay $70.87, while arguably "cold, callous

and lacking in sensitivity," is not "outrageous conduct" as defined under Kentucky law.  Thus,

Wells Fargo's Motion for Summary Judgment on Count XII shall be granted.

**Conclusion**

For the foregoing reasons, Wells Fargo's Motion for Summary Judgment shall be

GRANTED as to Counts I, II, III, V, VI, VII, VIII, IX, XI, and XII and DENIED as to Counts IV and

X.  A separate order shall be entered accordingly.


Copies To:

Brian Canupp, Esq.

Tiffany Yahr, Esq.

John Spires, Esq.

Ellen Arvin Kennedy, Esq.

21

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
*The affixing of this Court's electronic seal below is proof this document*
*has been signed by the Judge and electronically entered by the Clerk in the*
*official record of this case.*



**Signed By:**
*Tracey N. Wise*
**Bankruptcy Judge**
**Dated: Wednesday, August 17, 2011**
**(tnw)**